**ZISHOLTZ & ZISHOLTZ, LLP**
170 Old Country Road, Suite 300
Mineola, New York 11501
Tel.: (516) 741-2200
Fax: (516) 746-1024
Attorneys for Defendant, *The Closing Network, Ltd*

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------------x
AURORA LOAN SERVICES LLC,                    Docket No.: 09-CV-9651 (HB)

                            Plaintiff,

      -against-

DAVID SADEK; WINTHROP ABSTRACT, LLC,
FIRST FINANCIAL EQUITIES, INC.; THE
CLOSING NETWORK, LTD.; 100 W. 58TH ST. 7C
LLC; MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.; JPMORGAN CHASE BANK, N.A.;
BOARD OF MANAGERS WINDSOR PARK
CONDOMINIUM; WINDSOR TOV LLC; FREMONT
INVESTMENT & LOAN; JOHN DOES 1-10,

                            Defendants.
-------------------------------------------------------------------x

## MEMORANDUM OF LAW
## IN SUPPORT OF DEFENDANT,
## THE CLOSING NETWORK, LTD.'S MOTION
## FOR SUMMARY JUDGMENT

The Defendant, **THE CLOSING NETWORK, LTD.** (hereinafter referred to as "**CLOSING NETWORK**"), by its attorneys, **Zisholtz & Zisholtz, LLP**, respectfully submits this Memorandum of Law in support of its motion seeking an Order granting summary judgment pursuant to Federal Rules of Civil Procedures 56 dismissing plaintiff's claims for breach of contract and negligence against the Defendant, **CLOSING NETWORK** in the Summons and Complaint.

## PRELIMINARY STATEMENT

This is an action instituted by the Plaintiff, **AURORA LOAN SERVICES, LLC** (hereinafter referred to as "**AURORA**") to foreclose two Mortgages and two condominium units, Unit 7C and Unit 5F, located at 100 West 58th Street, New York ("Unit 7C" and "Unit 5F").

In its summons and complaint, the Plaintiff, **AURORA**, also asserted claims for breach of claims and negligence against the Defendant, **CLOSING NETWORK**.

On or about February 28, 2011, by a Stipulation and an Order of the Court, the Defendant, **CLOSING NETWORK**, served its Amended Answer.

The **CLOSING NETWORK's** Amended Answer contains three cross claims against the defendants, **DAVID SADEK** (hereafter referred to as "**SADEK**") and defendant, **FIRST FINANCIAL EQUITIES, INC.** (hereafter referred to as "**FFE**") for fraud. In each of the cross claims against **SADEK** and **FFE**, a response was demanded.

Both defendants **SADEK** and **FFE** have been duly served with the Amended Answer with its cross claims, as evidenced from the attached Affidavits of Services in this motion.

To date, the defendant **SADEK** and **FFE** have not participated in the litigation and/or otherwise answered, responded or moved with respect to the allegations and the claims contained

in the cross claims of **CLOSING NETWORK** and now are in default. **CLOSING NETWORK** is presently in the process of pursuing a default judgment against **SADEK** and **FFE**.

## STATEMENT OF FACTS

In or about November 2005, defendant, **SADEK**, retained the Law Firm of Zucker & Kwestel, LLP, a separate entity from **CLOSING NETWORK** and a non-party to this action, to represent **SADEK** as his counsel in connection with his purchase of two condominium units, Unit 7C and Unit 5F, at 100 West 58th Street, New York, New York.

After the Contract of Sale was executed and prior to the purchase closings, **Steven Kwestel**, as attorney for **SADEK**, acting on behalf of the firm of Zucker & Kwestel, LLP, advised **SADEK**, the sums of the funds to be prepared for the purchases of Unit 7C and Unit 5F.

Thereafter, before the closing taken place on or about February 21, 2006, **SADEK** wired all required funds to the firm of Zucker & Kwestel, LLP with respect to the purchase closings of Unit 7C and Unit 5F.

There were no indications that there were any Mortgages taken out for Unit 7C and Unit 5F when **SADEK** purchased them on February 21, 2006.

The purchases of Unit 7C and Unit 5F were cash transactions.

As a result, the **CLOSING NETWORK**, did not involve in the purchase transactions on February 21, 2006 and no financial loan documents in related to Mortgages was presented nor executed at the closings.

Subsequently, on or about February 27, 2006, defendant, **SADEK**, purportedly refinanced his Unit 5F Mortgage with **FFE** in the sum of $1.2 million dollars and his Unit 7C Mortgages with FFE in the sum of $1.35 million dollars in which defendant, **SADEK** agreed to repay the sums under the terms and conditions of the Notes and Mortgages.

However, unbeknownst to **CLOSING NETWORK**, **SADEK** fraudulently represented himself as a member or an officer of the **CLOSING NETWORK,** and with **FFE**, jointly and severally, falsely and fraudulently manipulated and generated the closing documents including a HUD-1 Statement, in relating to the refinances of Unit 7C and Unit 5F on behalf of the **CLOSING NETWORK**.

Neither was the **CLOSING NETWORK** nor Zucker & Kwestel LLP involved in any way in the February 27, 2006 refinance transactions.

On or about May 24, 2006, **AURORA** purchased Unit 7C and Unit 5F Notes and Mortgages from **FFE**.

Thereafter, on or about September 11, 2006, defendant, **100 West 58th Street 7C LLC**, through defendant, **SADEK**, executed a Mortgage in favor of MERS., as nominee for **FFE** in the sum of $650,000 secured by the property of Unit 7C.

The Mortgage of $650,000, secured by Unit 7C, was recorded on or about December 15, 2006 and was subsequently assigned to Washington Mutual Bank by an Assignment of Mortgage on February 2, 2007.

## ARGUMENT

### CLOSING NETWORK IS ENTITLED TO A SUMMARY JUDGMENT AS A MATTER OF LAW

Pursuant to Rule 56 of the Federal Rules of Civil Procedures, a party may move for summary judgment as to all or any part of a claim. *See*, Federal Rules of Civil Procedures 56; **Matsushita Electronic Industrial Company v. Zenith Radio Corp.**, 475 U.S. 574 (1986). Summary judgment is appropriate if the pleadings, depositions, answers to the interrogatories, together with the affidavits, if any, show that there is no genuine issue as to any material fact and

that moving party is entitled to a judgment as a matter of law. An issue of fact is genuine "if the evidence is such that a reasonable jury could return a verdict for non-moving party." **Williams v. Utica Coll. of Syracuse University**, 453 F.3d 112, 116 (2nd Cir. 2006), quoting, **Stuart v. American Cyanamid Co.**, 158 F.3d 622, 626 (2nd Cir. 1998).

Once the moving party established that no genuine facts or disputes exist, the burden then shifts to the non-moving party to demonstrate that there exists a genuine issue requiring a trial. **McClellan v. Smith**, 439 F.3d 137 (2nd Cir. 2006). In addition, to defeat a motion for summary judgment, the non-moving party must do more than show that there is some metophysical doubt as to the material facts and it may not rely on conclusory allegations or unsubstantiated speculation. **Jeffreys v. City of New York**, 426 F.3d 549 (2nd Circuit) quoting, **Fujitsu Ltd. v. Federal Express Corp.**, 247 F.3d 423 (2nd Cir. 2001).

It is well settled that the element of comprising a cause of action on negligence are: 1) a duty owed by a defendant to plaintiff; 2) a breach of that duty by defendant; 3)a reasonable close causal connection between the conduct constituting a breach of duty and the resulting injury, more commonly known as the "proximately cause"; and 4) actual loss or damage. *See W. Page Keeton, et al. Prosser and Keeton, on the Law of Torts, Laws Ed. §30*, at 164-65 (5th Edition, 1984); *See also* **Livingston v. Gribetz**, 549 F.2d 238, 242, (S.D.N.Y. 1982). Failure to establish or prove any of the required elements warrants a dismissal.

Similarly, the essential elements of cause of action to recover damages for breach of contract is the existence of a contract, the performance under the contract, the defendants' breach of that contract, and the resulting damages. **Van Brunt v. Rauschenberg**, 799 F. Supp. 1467, (S.D.N.Y.1992); **Strappon Group, Ltd. v. Sprayregen**, 459 F.Supp. 1216 (S.D.N.Y. 1978).

4

Here, the records clearly and unequivocally established that the defendant, **CLOSING NETWORK**, was not the settlement agent at both February 21, 2006 purchase closings and at the February 27, 2006 refinance closings.

As **Steven Kwestel**, an attorney and officer of the **CLOSING NETWORK** testified in his deposition:

> "Q. To your knowledge, the Closing Network participated as the settlement agent in any refinanced transaction involving either or both of the two properties at 100 West 58th Street?
> .....
>
> A. So any of the transactions that are the matter of this action on February 27, 2006, the Closing Network had no involvement whatsoever in these transactions."

(*See*, Kwestel's deposition as annexed **Exhibit "H"**, at pages 42-43).

In fact, there was no indication that any loans or mortgages were taken out when **SADEK** purchased the two condominium units, Unit 7C and Unit 5F on February 21, 2006.

When the law firm of Zucker & Kwestel represented **SADEK** in his purchases of the two condominium units, **SADEK** indicated that he would not be taken loans in his purchases.

Kwestel also testified in his deposition the following:

> "Q. Did you have any understanding of where the funds were coming from for Mr. Sadek to purchase these two properties?
>
> A. No. He just said he'd send us the money.
>
> Q. And did he send you the money?
>
> A. Yes, he did.
>
> Q. Was it on that day?
>
> A. If it wasn't, most likely that day, the earliest it would have been would be the night before that day.
>
> Q. In what manner did he send it; in other words, wire, check?

A. I'm sure it was a wire transfer. I'd have to go back and look, but I'm sure it was a wire transfer.

(*See*, Kwestel's deposition, at pages 41 -42)

Kwestel further testified:

Q. I understand from your prior testimony that Zucker & Kwestel represented David Sadek in his purchase of the two properties?

A. Yes.

Q. And that purchase, to your knowledge, was a cash transaction, were cash transactions?

A. Yes.

Q. It was then, from what I've seen, and I'm going to use the words, a refinanced transaction, February 17. One transaction was for 1.2 million and the other was for 1.35 million. Both of those transactions of a prior – of prior mortgage loans that David Sadek took out. Those prior mortgage loans, was either the Closing Network or Zucker & Kwestel involve in?

A. No. As far as we knew, there was no mortgage taken out for the property when David purchased it. As a matter of fact, it there was a title bill that we provided to you, the title bill shows that there was only a purchase. *There were no – there was no loan, there was no loan amount. There was no charges for recording a mortgage.*
Also, typically, in a purchase of a new – of new construction, which these two units were, in the event that a mortgage is taken out to by the purchaser, the money that would have normally been paid to New York City for mortgage recording tax would go to the seller as what they call a mortgage cash credit. In this particular situation, there was no sums paid to the seller for a mortgage tax credit.
As far as I was concerned and as far as I knew, this was a cash transaction. The purchase was a cash transaction. There was no mortgage being taken out, to the best of my knowledge."

(*See* Kwestel's deposition, at page 45-47)

Contrary to Sedak's testimony, both closing statements for Unit 7C and Unit 5F indicate there was no loan involved, as evidenced from annexed **Exhibit "C"**, copies of the closing statements for the two condominium units.

6

The marked-up title report by **WITHROP ABTRACT, LLC** also clearly indicated that no mortgage was taken out on February 21, 2006 purchase transactions, as evidenced from annexed **Exhibit "E"**, copies of marked-up title report. Particularly, the Owner's Policy undeniably showed that no mortgage was involved. See ¶ 4, Schedule B of the Owner's Police as annexed hereto as **Exhibit "F"**.

In addition, none of the closing documents including HUD-1 Statement was prepared or generated by the **CLOSING NETWORK** at February 27, 2006 refinance transactions for Unit 7C and Unit 5F. In fact, the HUD-1 Statements for both units were not even signed by the **CLOSING NETWORK**. (See annexed **Exhibit "G"**)

**SADEK** testified in his deposition that the HUD-1 Statement with respect to the February 27, 2006 refinance transactions were prepared by defendant, **FFE**. (See Sadek's deposition as annexed **Exhibit "I"**, page 60-61, and page 129).

As Kwestel explained why the HUD-1 Statements for Unit 7C and Unit 5F refinances were not prepared by the **CLOSING NETWORK** in his deposition:

> "Q.   What is it that makes you say that; what is it about it that indicates to you that it wouldn't be the way your office would prepare a HUD?
>
> A.   Several times. Starting with the way the form is printed out, starting with the fact that all the total – I shouldn't say all – many of the subtotals are totaled up and the math is calculated via the computer that it is initially generated from.
>
> When we do a closing, there are title charges. We list them out. This was a preprinted form that First Financial Equities would give us for a guide.
>
> Typically, on the refinance we would input it into our own program which is more standard for a refinance transaction. *But this is the way that First Financial many times gave us the HUD form. It lists attorney fees to First Financial Equities, Inc.* Clearly, if we were preparing HUD, we'd like to get paid and we would like to think we'd put our firm's name, but it's not. There are no title charges listed here. *Additionally, there's no signature of settlement agent. We always sign when we do it – when the Closing Network did a standard closing, we would always sign as the settlement agent acknowledging that it was us.*

7

> This is a form I can tell you, based on my knowledge of other documents that were prepared by First Financial, this was just generated off the computer by whoever generated the documents on behalf of First Financial and was just signed by Mr. Sadek."

(See Kwestel deposition, page 55-57)

In addition, when **SADEK** was questioned what the **CLOSING NETWORK's** role is in connection with the refinance transactions on February 27, 2006, he testified that "he has no recollection of Closing Network attending the closing." (See Sadek's deposition, page 100)

Again, contrary to Sadek's testimony, there were no record of wire transfers from **FFE** or other lenders with the amount of $1.2 million and $1.35 million to **CLOSING NETWORK** between the period of February 27, 2006 and March 3, 2007, as evidenced from the annexed **Exhibit "D"**, bank statements from the escrow account of **CLOSING NETWORK** and business account of Zucker & Kwestel, LLP.

Aside from the fact that the **CLOSING NETWORK** has only limited participation in connection with September 11, 2006 closing with respect to the $650,000 Mortgage, at no time did the **CLOSING NETWORK** participate as settlement agent with respect to the refinance closings of Unit 7C refinance and Unit 5F refinance which took place on or about February 27, 2006.

Further, it was the title company- defendant, **WINTHOP ABSTRACT, LLC's** duty and responsibilities to record the deed and Mortgages.

**SADEK** clearly testified in his deposition several times that "WINTHOP was the one responsible for such recording, not the settlement agent." (*See* Sadek's deposition, page 62-63 and page 83)

Hence, it concludes that **CLOSING NETWORK** has no duty or responsibility concerning the closing documentation for either the February 21, 2006 purchase closings or

8

February 27, 2006 closings, and the claims as against **CLOSING NETWORK** for breach of contract and for negligence should be dismissed as a matter of law accordingly.

## CONCLUSION

Defendant, **CLOSING NETWORK**, has set forth its entitlement to summary judgment, as a matter of law, dismissing causes of action for breach of contract and negligence as against the defendant, **CLOSING NETWORK**. The documentary evidence established by the records and submitted herewith show that plaintiff's claims are without merit.

Based upon the foregoing, it is respectfully requested that defendant's motion be granted in its entirety.

                                                    **ZISHOLTZ & ZISHOLTZ, LLP**

                                                    By: _____
                                                        Meng Cheng
                                                        *Attorneys for Defendants,*
                                                        ***THE CLOSING NETWORK***
                                                        170 Old Country Road - Suite 300
                                                        Mineola, New York 11501
                                                         (516) 741-2200