RECEIVED
SDNY DOCKET UNIT

William C. Sandelands, Esq.
Tompkins, McGuire, Wachenfeld & Barry, LLP
Four Gateway Center
100 Mulberry Street, Suite 5
Newark, NJ 07102
(973) 622-3000
*Attorneys for plaintiff Aurora Loan Services LLC*

2010 APR 14   A 10: 51

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| AURORA LOAN SERVICES LLC, <br><br> Plaintiff, <br><br> v. <br><br> DAVID SADEK; WINTHROP ABSTRACT, LLC; FIRST FINANCIAL EQUITIES, INC.; THE CLOSING NETWORK, LTD.; 100 W. 58TH ST. 7C LLC; MORTGAGE ELECTRONIC REGISTRATION SYSTEMS, INC.; JPMORGAN CHASE BANK, N.A.; BOARD OF MANAGERS WINDSOR PARK CONDOMINIUM; WINDSOR TOV LLC; FREMONT INVESTMENT & LOAN; JOHN DOES 1-10, <br><br> Defendants. | CIVIL ACTION <br><br> DOCKET NO.: 09-CV-9651 (HB) <br><br><br><br> AMENDED COMPLAINT |

Plaintiff Aurora Loan Services LLC as and for its amended complaint against defendants

alleges as follows:

## THE PARTIES

1.      Plaintiff Aurora Loan Services LLC ("Aurora") is a limited liability company

formed under the laws of the State of Delaware with its principal place of business in Littleton,

Colorado.

2.      Defendant David Sadek ("Sadek") is a resident of the State of New Jersey,

residing in Teaneck, New Jersey.

3. Defendant Winthrop Abstract, LLC ("Winthrop") is or was at all relevant times a limited liability company formed under the laws of the State of New York with a business address of 654 Sharrotts Road, Staten Island, NY 10309.

4. Defendant First Financial Equities, Inc. ("FFE") is or was at all relevant times a corporation formed under the laws of the State of New York, with business locations at 300 Frank W. Burr Boulevard, 4th Floor, Teaneck, NJ 07666 and 25 Rockwood Place, Englewood, NJ 07631.

5. Defendant The Closing Network, Ltd. ("Closing Network") is or was at all relevant times a corporation formed under the laws of the State of New York with a business address of 56 Harrison Street, Suite 504, New Rochelle, New York 10801 and 300 Frank W. Burr Boulevard, 2nd Floor, Teaneck, NJ 07666.

6. Defendant 100 W. 58th St. 7C LLC ("7C LLC") is or was at all relevant times a limited liability company formed under the laws of the State of New Jersey with a business address of 300 Frank W. Burr Boulevard, 4th Floor, Teaneck, NJ 07666.

7. Defendant Mortgage Electronic Registration Systems, Inc. ("MERS") is a corporation formed under the laws of the State of Delaware with a business address of 1818 Library Street, Suite 300, Reston, VA 20190.

8. Defendant JPMorgan Chase Bank, National Association ("Chase") is a national association.

9. Defendant Board of Managers Windsor Park Condominium ("Board of Managers") has a business address of c/o Bellmarc Property Management Services, 325 Park Avenue South, New York, NY 10010 and 936 Broadway, New York, NY 10010.

2

10.    Defendant Windsor Tov LLC ("Windsor") is or was at all relevant times a limited liability company formed under the laws of the State of Delaware with a business address of 150 Nassau Street, Suite 20C, New York, NY 10038.

11.    Defendant Fremont Investment & Loan ("Freemont") is a California industrial bank with a business address of 175 N. Riverview, Anaheim, CA 92808.

12.    Defendants John Does 1-10 are fictitious names representing the tenants, persons or corporations, if any, having or claiming an interest in or lien upon the condominium units affected by this action.

## JURISDICTION AND VENUE

13.    This Court has jurisdiction over this action pursuant to 28 U.S.C. §1332(a)(1) based upon the parties' diversity of citizenship and as the amount in controversy exceeds $75,000, exclusive of interest and costs.

14.    Venue is proper in this district under 28 U.S.C. §1391(a)(2) as a substantial part of the events underlying this action occurred in this district, involves real property located within this district and defendants are subject to personal jurisdiction in this district.

## FACTUAL ALLEGATIONS

15.    At all relevant times, Sadek was an officer, shareholder, principal or employee of FFE, Winthrop, Closing Network and 7C LLC.

16.    On or about February 21, 2006, Sadek purchased two condominium units, Unit 7C and Unit 5F, located at 100 West 58th Street, New York, NY from Windsor.

17.    In exchange, Windsor executed two deeds – a deed transferring Unit 7C to Sadek (the "Unit 7C Deed") and a deed transferring Unit 5F to Sadek (the "Unit 5F Deed").

18.    Neither the Unit 7C Deed nor the Unit 5F Deed was recorded.

3

19.     To finance his purchase of Unit 7C, Sadek purportedly obtained two loans from FFE in the amounts of $995,000.00 and $400,000.00.

20.     To secure the sums advanced, Sadek purportedly executed two mortgages in favor of FFE secured by Unit 7C (the "FFE Unit 7C Mortgages").

21.     The FFE Unit 7C Mortgages were never recorded.

22.     To finance his purchase of Unit 5F, Sadek purportedly obtained two loans from FFE in the amounts of $990,000.00 and $270,000.00.

23.     To secure the sums advanced, Sadek purportedly executed two mortgages in favor of FFE secured by Unit 5F (the "FFE Unit 5F Mortgages").

24.     The FFE Unit 5F Mortgages were never recorded.

25.     Sadek subsequently sought to refinance both the FFE Unit 7C Mortgages and the FFE Unit 5F Mortgages.

26.     On or about February 27, 2006, Sadek refinanced the FFE Unit 7C Mortgages through a loan obtained from FFE in the amount of $1,350,000.00 (the "Unit 7C Refinance").

27.     In connection with the Unit 7C Refinance, Sadek executed a loan application, various disclosures and loan documents.

28.     Sadek also executed a note in the amount of $1,350,000.00 in which Sadek agreed to repay the sum, with interest, to FFE in monthly payments commencing April 1, 2006 and continuing through March 1, 2036 (the "Unit 7C Note").

29.     To secure the sums advanced under the Unit 7C Note, Sadek executed a mortgage for the sum of $1,350,000.00 in favor of MERS as nominee for FFE secured by Unit 7C (the "Unit 7C Mortgage").

30.     The Closing Network was the settlement agent for the Unit 7C Refinance.

4

31. The Unit 7C Mortgage was never recorded.

32. On or about February 27, 2006, Sadek refinanced the FFE Unit 5F Mortgages through FFE for the sum of $1,200,000.00 (the "Unit 5F Refinance").

33. In connection with the Unit 5F Refinance, Sadek executed a loan application, various disclosures and loan documents.

34. Sadek also executed a note in the amount of $1,200,000.00 in which Sadek agreed to repay the sum, with interest, to FFE in monthly payments commencing April 1, 2006 and continuing through March 1, 2036 (the "Unit 5F Note").

35. To secure the sums advanced under the Unit 5F Note, Sadek executed a mortgage for the sum of $1,200,000.00 in favor of MERS as nominee for FFE secured by Unit 5F (the "Unit 5F Mortgage").

36. The Closing Network was the settlement agent for the Unit 5F Refinance.

37. The Unit 5F Mortgage was never recorded.

38. On or about May 24, 2006, Aurora's predecessor-in-interest, Lehman Brothers Bank, FSB ("Lehman"), purchased the Unit 7C Note and Unit 5F Note from FFE.

39. Aurora is the current holder and the servicer of the Unit 7C Note and Unit 5F Note.

40. On or about September 11, 2006, FFE advanced an additional sum of $650,000.00 to 7C LLC.

41. To secure the sum advanced, 7C LLC, through Sadek, executed a mortgage in favor of MERS as nominee for FFE for the sum of $650,000.00 secured by Unit 7C (the "7C LLC Mortgage").

42. The 7C LLC Mortgage was recorded on December 15, 2006 under CRFN

2006000688570.

43.     The 7C LLC Mortgage was subsequently assigned to Washington Mutual Bank ("WMB") by an assignment of mortgage dated February 2, 2007 and recorded on February 13, 2007 under CRFN 2007000082827.

44.     Upon information and belief, Chase is the current holder of the 7C LLC Mortgage as Chase acquired certain assets of WMB from the FDIC on September 25, 2008.

45.     Sadek defaulted on his monthly obligations under both the Unit 7C Note and the Unit 5F Note by failing to make the required monthly payments for September 1, 2007 and all subsequent payments.

46.     Aurora duly notified Sadek of his defaults under the terms of the notes and mortgages.

47.     Sadek failed to cure the default.

48.     The Unit 7C Mortgage remains due for September 1, 2007.

49.     The Unit 5F Mortgage remains due for September 1, 2007.

50.     Aurora has been paying the yearly taxes and insurance on both Unit 7C and Unit 5F.

51.     Fremont is a secured party of Windsor by virtue of a UCC financing statement recorded on April 14, 2004 in CRFN 2004000223642.

52.     Upon information and belief, Fremont's interest has not been released as against Unit 7C or Unit 5F.

53.     The Board of Managers currently holds liens on both Unit 7C and Unit 5F for unpaid common charges.

6

## AS AND FOR A FIRST CAUSE OF ACTION
### (To Record A Copy Of The Unit 7C Deed And To Impose An Equitable Mortgage on Unit 7C)

54.    Aurora repeats each of the allegations set forth in Paragraphs 1 through 53 as though more fully set forth herein.

55.    For valuable consideration, Windsor sold Unit 7C to Sadek and executed the Unit 7C Deed conveying title to Sadek.

56.    For reasons unknown to Aurora, the Unit 7C Deed was never recorded leaving title to Unit 7C vested in Windsor.

57.    Aurora is not in possession of the original Unit 7C Deed.

58.    In order to correct the records relating to the title to Unit 7C, a copy of the Unit 7C Deed should be permitted for recording in lieu of the original.

59.    In the alternative, Windsor should be compelled to execute another copy of the Unit 7C Deed conveying title to Unit 7C to Sadek as of February 21, 2006 – the date Sadek purchased Unit 7C from Windsor.

60.    In connection with the Unit 7C Refinance, the Unit 7C Mortgage executed by Sadek was intended to be a first mortgage on Unit 7C.

61.    The Closing Network, as the settlement agent in the Unit 7C Refinance, failed to ensure that the Unit 7C Mortgage was properly acknowledged thereby rendering the Unit 7C Mortgage defective.

62.    Winthrop, as the title agent, failed to ensure that Unit 7C Mortgage was recorded against the property.

63.    To date, Aurora's interest in Unit 7C is currently unperfected as the Unit 7C Mortgage is not recorded.

7

64. All parties intended the Unit 7C Mortgage to be a first mortgage on Unit 7C.

65. As Aurora's security interest is currently unperfected, an equitable mortgage must be imposed on Unit 7C, *nunc pro tunc*, to February 27, 2006 in order to conform with the intentions of the parties involved.

66. In the alternative, Sadek should be compelled to re-execute the Unit 7C Mortgage in accordance with the Compliance Agreement executed by Sadek at the closing in which Sadek agreed to fully cooperate with the lender to correct any errors with respect to the closing documents.

WHEREFORE, Aurora demands that a judgment be entered (1) allowing a copy of the Unit 7C Deed to be recorded against the property, or in the alternative, compelling Windsor to execute another deed conveying title to Unit 7C to Sadek as of February 21, 2006, (2) imposing an equitable mortgage in the amount of $1,350,000.00 on Unit 7C, *nunc pro tunc*, to February 27, 2006 in favor of Aurora, or in the alternative, compelling Sadek to re-execute the Unit 7C Mortgage and (3) for such other relief as this court deems just and necessary.

## AS AND FOR A SECOND CAUSE OF ACTION
### (For Subordination Of The 7C LLC Mortgage)

67. Aurora repeats each of the allegations set forth in Paragraphs 1 through 66 as though more fully set forth herein.

68. As originator of the Unit 7C Mortgage, FFE had actual knowledge of the existence of the Unit 7C Mortgage at the time it originated the 7C LLC Mortgage.

69. At the time the 7C LLC Mortgage originated, the Unit 7C Deed was not recorded.

70. Title to Unit 7C was not vested in 7C LLC at the time the 7C LLC Mortgage originated.

71. Sadek executed the 7C LLC Mortgage on behalf of 7C LLC.

72.     At the time Sadek executed the 7C LLC Mortgage, Sadek knew of the existence
of the Unit 7C Mortgage.

73.     The Unit 7C Mortgage was intended to be a first mortgage on the property.

74.     Upon information and belief, the 7C LLC Mortgage was intended to be a second
mortgage on the property.

75.     As the Unit 7C Mortgage was never recorded, the 7C LLC Mortgage may
currently have priority over Aurora's interest in the property.

76.     Chase, as assignee of FFE, had actual and/or constructive notice of the existence
of the Unit 7C Mortgage based on the knowledge possessed by FFE, Sadek and 7C LLC at the
time of the origination of the 7C LLC Mortgage.

77.     Therefore, Chase's interest in the property is junior and subordinate to Aurora's
interest in the property.

WHEREFORE, Aurora demands that a judgment be entered (1) subordinating the 7C
LLC Mortgage to the Unit 7C Mortgage or any equitable mortgage held by Aurora on Unit 7C
and (2) for such other relief as this court deems just and necessary.

## AS AND FOR A THIRD CAUSE OF ACTION
### (To Record A Copy Of The Unit 5F Deed And To
### Impose An Equitable Mortgage on Unit 5F)

78.     Aurora repeats each of the allegations set forth in Paragraphs 1 through 77 as
though more fully set forth herein.

79.     For valuable consideration, Windsor sold Unit 5F to Sadek and executed the Unit
5F Deed conveying title to Sadek.

80.     For reasons unknown to Aurora, the Unit 5F Deed was never recorded leaving
title to Unit 5F vested in Windsor.

9

81. Aurora is not in possession of the original Unit 5F Deed.

82. In order to correct the records relating to the title to Unit 5F, a copy of the Unit 5F Deed should be permitted for recording in lieu of the original.

83. In the alternative, Windsor should be compelled to execute another copy of the Unit 5F Deed conveying title to Unit 5F to Sadek as of February 21, 2006 – the date Sadek purchased Unit 5F from Windsor.

84. In connection with the Unit 5F Refinance, the Unit 5F Mortgage executed by Sadek was intended to be a first mortgage on Unit 5F.

85. The Closing Network, as the settlement agent in the Unit 5F Refinance, failed to ensure that the Unit 5F Mortgage was properly acknowledged thereby rendering the Unit 5F Mortgage defective.

86. Winthrop, as the title agent, failed to ensure that Unit 5F Mortgage was recorded against the property.

87. To date, Aurora's interest in Unit 5F is currently unperfected as the Unit 5F Mortgage is not recorded.

88. All parties intended the Unit 5F Mortgage to be a first mortgage on Unit 5F.

89. As Aurora's security interest is currently unperfected, an equitable mortgage must be imposed on Unit 5F, *nunc pro tunc*, to February 27, 2006 in order to conform with the intentions of the parties involved.

90. In the alternative, Sadek should be compelled to re-execute the Unit 5F Mortgage in accordance with the Compliance Agreement executed by Sadek at the closing in which Sadek agreed to fully cooperate with the lender to correct any errors with respect to the closing documents.

WHEREFORE, Aurora demands that a judgment be entered (1) allowing a copy of the Unit 5F Deed to be recorded against the property, or in the alternative, compelling Windsor to execute another deed conveying title to Unit 5F to Sadek as of February 21, 2006, (2) imposing an equitable mortgage in the amount of $1,200,000.00 on Unit 5F, *nunc pro tunc*, to February 27, 2006, or in the alternative, compelling Sadek to re-execute the Unit 5F Mortgage and (3) for such other relief as this court deems just and necessary.

## AS AND FOR A FOURTH CAUSE OF ACTION
### (To Foreclose On The Unit 7C Mortgage Or The Equitable Mortgage Held By Aurora)

91. Aurora repeats each of the allegations set forth in Paragraphs 1 through 90 as though more fully set forth herein.

92. Sadek executed the Unit 7C Note and Unit 7C Mortgage in exchange for receiving a loan in the amount of $1,350,000.00 from FFE.

93. Upon the imposition of an equitable lien or the re-execution of the Unit 7C Mortgage, Aurora will pay the applicable mortgage recording tax associated with the recording of the Unit 7C Mortgage.

94. Aurora is the holder and current servicer of the Unit 7C Note.

95. Sadek defaulted in his monthly mortgage payments under the terms of the Unit 7C Note and Unit 7C Mortgage.

96. By letter dated November 20, 2007, Aurora duly notified Sadek of his default pursuant to Paragraph 22(b) of the terms of the Unit 7C Mortgage.

97. Despite having proper notice, Sadek failed to cure the default.

98. The current unpaid principal balance is $1,350,000.00.

99. Sadek does not reside at Unit 7C.

100. Sadek purchased Unit 7C as an investment property.

11

101.    Aurora has elected to accelerate the debt and call due the entire amount secured by the Unit 7C Mortgage or equitable mortgage imposed by this court.

102.    In order to protect its security interest in Unit 7C, Aurora has paid or may be compelled to pay during the pendency of this action, local taxes, assessments, water rates, insurance premiums and other charges assessed against Unit 7C.

103.    Aurora hereby declares that, pursuant to the terms of the Unit 7C Mortgage, any advances made by Aurora to protect its interest in Unit 7C, with interest thereon, be added to the total amount due under the Unit 7C Note and Unit 7C Mortgage and constitute a valid lien on Unit 7C.

104.    MERS, 7C LLC, Board of Managers, Chase, Windsor and Fremont are all named as parties to this action as they may have or claim to have some interest in or lien upon Unit 7C being foreclosed herein, which interest or lien, if any, accrued subsequent to Aurora's lien and is subordinate to the Unit 7C Mortgage.

105.    There are no current proceedings pending to collect the debt due under the Unit 7C Note or to foreclose the Unit 7C Mortgage other than the instant case.

106.    Aurora shall not be deemed to have waived, altered, released or changed its election to accelerate the debt owed under the Unit 7C Note and the Unit 7C Mortgage, or the default mentioned above by reason of the acceptance of any payment after the commencement of this action, if any. Aurora's election shall continue to be in effect at all times during the pendency of this action.

WHEREFORE, Aurora demands that a judgment be entered (1) foreclosing the Unit 7C Mortgage or equitable lien held by Aurora on Unit 7C, (2) decreeing the amounts due for principal, interest, advances and costs accruing under the Unit 7C Note and Unit 7C Mortgage,

(3) for the attorneys' fees and costs incurred through this action, (4) foreclosing defendants' rights, claims, liens, interests or equity of redemption in and to Unit 7C, (5) authorizing the sale of Unit 7C to raise the amounts due for principal, interest, costs, allowances and disbursements, together with any monies advanced and paid by Aurora, (6) decreeing that Sadek be adjudged to pay any deficiency remaining after the completion of the foreclosure sale, and (7) for such other or further relief as this court deems just and necessary.

## AS AND FOR A FIFTH CAUSE OF ACTION
### (To Foreclose On The Unit 5F Mortgage Or The Equitable Mortgage Held By Aurora)

107. Aurora repeats each of the allegations set forth in Paragraphs 1 through 106 as though more fully set forth herein.

108. Sadek executed the Unit 5F Note and Unit 5F Mortgage in exchange for receiving a loan in the amount of $1,200,000.00 from FFE.

109. Upon the imposition of an equitable lien or the re-execution of the Unit 5F Mortgage, Aurora will pay the applicable mortgage recording tax associated with the recording of the Unit 5F Mortgage.

110. Aurora is the holder and current servicer of the Unit 5F Note.

111. Sadek defaulted in his monthly mortgage payments under the terms of the Unit 5F Note and Unit 5F Mortgage.

112. By letter dated October 19, 2007, Aurora duly notified Sadek of his default pursuant to Paragraph 22(b) of the terms of the Unit 5F Mortgage.

113. Despite having proper notice, Sadek failed to cure the default.

114. The current unpaid principal balance is $1,200,000.00.

115. Sadek does not reside at Unit 5F.

116. Sadek purchased Unit 5F as an investment property.

117. Aurora has elected to accelerate the debt and call due the entire amount secured by the Unit 5F Mortgage or equitable mortgage imposed by this court.

118. In order to protect its security interest in Unit 5F, Aurora has paid or may be compelled to pay during the pendency of this action, local taxes, assessments, water rates, insurance premiums and other charges assessed against Unit 5F.

119. Aurora hereby declares that, pursuant to the terms of the Unit 5F Mortgage, any advances made by Aurora to protect its interest in Unit 5F, with interest thereon, be added to the total amount due under the Unit 5F Note and Unit 5F Mortgage and constitute a valid lien on Unit 5F.

120. MERS, Board of Managers, Windsor and Fremont are all named as parties to this action as they may have or claim to have some interest in or lien upon Unit 5F being foreclosed herein, which interest or lien, if any, accrued subsequent to Aurora's lien and is subordinate to the Unit 5F Mortgage.

121. There are no current proceedings pending to collect the debt due under the Unit 5F Note or to foreclose the Unit 5F Mortgage other than the instant case.

122. Aurora shall not be deemed to have waived, altered, released or changed its election to accelerate the debt owed under the Unit 5F Note and the Unit 5F Mortgage, or the default mentioned above by reason of the acceptance of any payment after the commencement of this action, if any. Aurora's election shall continue to be in effect at all times during the pendency of this action.

WHEREFORE, Aurora demands that a judgment be entered (1) foreclosing the Unit 5F Mortgage or equitable lien held by Aurora on Unit 5F, (2) decreeing the amounts due for principal, interest, advances and costs accruing under the Unit 5F Note and Unit 5F Mortgage,

14

(3) for the attorneys' fees and costs incurred through this action, (4) foreclosing defendants' rights, claims, liens, interests or equity of redemption in and to Unit 5F, (5) authorizing the sale of Unit 5F to raise the amounts due for principal, interest, costs, allowances and disbursements, together with any monies advanced and paid by Aurora, (6) decreeing that Sadek be adjudged to pay any deficiency remaining after the completion of the foreclosure sale, and (7) for such other or further relief as this court deems just and necessary.

## AS AND FOR A SIXTH CAUSE OF ACTION
### (For Breach Of Contract Against The Closing Network)

123.    Aurora repeats each of the allegations set forth in Paragraphs 1 through 122 as though more fully set forth herein.

124.    The Closing Network was selected by FFE and/or Sadek to be the settlement agent in both the Unit 7C Refinance and the Unit 5F Refinance.

125.    The Closing Network owed FFE, and its subsequent assignees, a duty to ensure that the closings on each of the properties were done in accordance with the lender's closing instructions.

126.    In particular, the Closing Network, as settlement agent, was responsible for making sure that each of the closing documents was properly executed at the closing, for disbursing the proceeds of each of the loans and for sending the mortgages for recording.

127.    At the closings, the Closing Network failed to notarize or properly acknowledge Sadek's execution of the Unit 7C Mortgage and the Unit 5F Mortgage.

128.    The Closing Network further failed to have both the Unit 7C Mortgage and the Unit 5F Mortgage recorded in the Office of the City Register of the City of New York.

129.    Aurora has been damaged as its security interests are currently unperfected on each of the properties.

130. Aurora's security interests have been further impaired by liens that have attached to the properties since the closings.

WHEREFORE, Aurora demands that a judgment be entered against the Closing Network for compensatory damages, including the attorneys' fees and costs incurred in bringing this suit, and for such further and other relief as this court deems just and necessary.

## AS AND FOR A SEVENTH CAUSE OF ACTION
### (For Breach of Contract Against Winthrop)

131. Aurora repeats each of the allegations set forth in Paragraphs 1 through 130 as though more fully set forth herein.

132. In connection with the Unit 7C Refinance, Winthrop provided a title commitment under title number WIN-NY122705013 (the "7C Title Commitment").

133. The 7C Title Commitment disclosed that the Unit 7C Deed and the FFE Unit 7C Mortgages were unrecorded.

134. The 7C Title Commitment advised that insurance would be provided to FFE, its successors or assigns, in the amount of $1,350,000.00 as long as certain exceptions were cleared at closing, *e.g.*, the satisfaction of the FFE Unit 7C Mortgages.

135. According to the HUD-1 Settlement Statement executed at the closing, Winthrop received $3,383.00 from the settlement proceeds for the payment of the premium for the title policy insuring the Unit 7C Mortgage as a first lien, as well as $810.00 in additional fees for various expenses associated with the title search and the issuance of the title policy.

136. Winthrop failed to ensure that the Unit 7C Deed and the Unit 7C Mortgage were recorded.

137. Further, despite receiving and accepting payment of the premium for the title policy, Winthrop failed to forward the premium to United General Title Insurance Company

16

LLC ("United General") or issue a final title policy to FFE, its successors or assigns.

138. A title claim tendered by Aurora to United General under the 7C Title Commitment was denied as United General advised that the premium was not received.

139. As a result of Winthrop's failure to forward the premium to United General and Winthrop's failure to issue a final title policy, Aurora is left with an uninsured interest in Unit 7C.

140. In connection with the Unit 5F Refinance, Winthrop provided a title commitment under title number WIN-NY122705012 (the "5F Title Commitment").

141. The 5F Title Commitment disclosed that the Unit 5F Deed and the FFE Unit 5F Mortgages were unrecorded.

142. The 5F Title Commitment advised that insurance would be provided to FFE, and its successors or assigns, in the amount of $1,200,000.00 as long as certain exceptions were cleared at closing, *e.g.*, the satisfaction of the FFE Unit 5F Mortgages.

143. According to the HUD-1 Settlement Statement executed at the closing, Winthrop received $3,063.00 from the settlement proceeds for the payment of the premium for the title policy insuring the Unit 5F Mortgage as a first lien, as well as $810.00 in additional fees for various expenses associated with the title search and the issuance of the title policy.

144. Winthrop failed to ensure that the Unit 5F Deed and the Unit 5F Mortgage were recorded.

145. Further, despite receiving and accepting payment of the premium for the title policy, Winthrop failed to forward the premium to United General or issue a final title policy to FFE, its successors or assigns.

146. A title claim tendered by Aurora to United General under the 5F Title

17

Commitment was denied as United General advised that the premium was not received.

147.    As a result of Winthrop's failure to forward the premium to United General and failure to issue a final title policy, Aurora is left with an uninsured interest in Unit 5F.

WHEREFORE, Aurora demands that a judgment be entered against Winthrop for compensatory damages, including the attorneys' fees and costs incurred in bringing this suit and for such further and other relief as this court deems just and necessary.

## AS AND FOR AN EIGHTH CAUSE OF ACTION
### (For Negligence Against The Closing Network)

148.    Aurora repeats each of the allegations set forth in Paragraphs 1 through 147 as though more fully set forth herein.

149.    The Closing Network was selected by Sadek and/or FFE to be the settlement agent in both the Unit 7C Refinance and the Unit 5F Refinance.

150.    The Closing Network owed FFE, and its subsequent assignees, a duty to ensure that the closings on each of the properties were done in accordance with the lender's closing instructions.

151.    In particular, the Closing Network, as settlement agent, was responsible for making sure that each of the closing documents was properly executed at the closing, for disbursing the proceeds of each of the loans and for sending the mortgages for recording.

152.    At the closings, the Closing Network failed to notarize or properly acknowledge Sadek's execution of the Unit 7C Mortgage and the Unit 5F Mortgage.

153.    The Closing Network further failed to ensure that both the Unit 7C Mortgage and the Unit 5F Mortgage recorded in the Office of the City Register of the City of New York.

154.    Aurora has been damaged as its security interests are currently unperfected on each of the properties.

155.    Aurora's security interests have been further impaired by liens that have attached to the properties since the closings.

WHEREFORE, Aurora demands that a judgment be entered against the Closing Network for compensatory damages, including the attorneys' fees and costs incurred in bringing this suit and for such further and other relief as this court deems just and necessary.

## AS AND FOR A NINTH CAUSE OF ACTION
### (For Negligence Against Winthrop)

156.    Aurora repeats each of the allegations set forth in Paragraphs 1 through 155 as though more fully set forth herein.

157.    In connection with the Unit 7C Refinance, Winthrop provided 7C Title Commitment.

158.    The 7C Title Commitment disclosed that the Unit 7C Deed and the FFE Unit 7C Mortgages were unrecorded.

159.    The 7C Title Commitment advised that insurance would be provided to FFE, its successors or assigns, in the amount of $1,350,000.00 as long as certain exceptions were cleared at closing, e.g., the satisfaction of the FFE Unit 7C Mortgages.

160.    According to the HUD-1 Settlement Statement executed at the closing, Winthrop received $3,383.00 from the settlement proceeds for the payment of the premium for the title policy insuring the Unit 7C Mortgage as a first lien, as well as $810.00 in additional fees for various expenses associated with the title search and the issuance of the title policy.

161.    Winthrop failed to ensure that the Unit 7C Deed and the Unit 7C Mortgage were recorded.

162.    Further, despite receiving and accepting payment of the premium for the title policy, Winthrop failed to forward the premium to United General or issue a final title policy to

19

FFE, its successors or assigns.

163.    A title claim tendered by Aurora to United General under the 7C Title Commitment was denied as United General advised that the premium was not received.

164.    As a result of Winthrop's failure to forward the premium to United General and Winthrop's failure to issue a final title policy, Aurora is left with an uninsured interest in Unit 7C.

165.    In connection with the Unit 5F Refinance, Winthrop provided the 5F Title Commitment.

166.    The 5F Title Commitment disclosed that the Unit 5F Deed and the FFE Unit 5F Mortgages were unrecorded.

167.    The 5F Title Commitment advised that insurance would be provided to FFE, and its successors or assigns, in the amount of $1,200,000.00 as long as certain exceptions were cleared at closing, *e.g.*, the satisfaction of the FFE Unit 5F Mortgages.

168.    According to the HUD-1 Settlement Statement executed at the closing, Winthrop received $3,063.00 from the settlement proceeds for the payment of the premium for the title policy insuring the Unit 5F Mortgage as a first lien, as well as $810.00 in additional fees for various expenses associated with the title search and the issuance of the title policy.

169.    Winthrop failed to ensure that the Unit 5F Deed and the Unit 5F Mortgage were recorded.

170.    Further, despite receiving and accepting payment of the premium for the title policy, Winthrop failed to forward the premium to United General or issue a final title policy to FFE, its successors or assigns.

171.    A title claim tendered by Aurora to United General under the 5F Title

20

Commitment was denied as United General advised that the premium was not received.

172.    As a result of Winthrop's failure to forward the premium to United General and failure to issue a final title policy, Aurora is left with an uninsured interest in Unit 5F.

WHEREFORE, Aurora demands that a judgment be entered against Winthrop for compensatory damages, including the attorneys' fees and costs incurred in bringing this suit and for such further and other relief as this court deems just and necessary.

## AS AND FOR TENTH CAUSE OF ACTION
### (For Unjust Enrichment Against The Closing Network)

173.    Aurora repeats each of the allegations set forth in Paragraphs 1 through 172 as though more fully set forth herein.

174.    The Closing Network received a fee in connection with the services provided at the closings of the Unit 7C Refinance and the Unit 5F Refinance.

175.    As set forth above, the Closing Network failed to provide competent services at the closings.

176.    In particular, the Closing Network failed to properly notarize and/or acknowledge the mortgages and failed to send the mortgages for recording.

177.    According to the HUD-1 Settlement Statement, the Closing Network disbursed $26,299.00 out of the settlement proceeds from the Unit 7C Mortgage for the payment of the fees and taxes associated with recording the Unit 7C Mortgage.

178.    As the Unit 7C Mortgage was never recorded, the Closing Network has been unjustly enriched by retaining the settlement proceeds from the closing that were to pay for the fees and taxes for the recording of the Unit 7C Mortgage.

179.    According to the HUD-1 Settlement Statement, the Closing Network disbursed $23,325.00 out of the settlement proceeds from the Unit 5F Mortgage for the payment of the fees

and taxes associated with recording the Unit 5F Mortgage.

180.   As the Unit 5F Mortgage was never recorded, the Closing Network has been unjustly enriched by retaining the settlement proceeds from the closing that were to pay for the fees and taxes for the recording of the Unit 5F Mortgage.

WHEREFORE, Aurora demands that a judgment be entered against the Closing Network for compensatory damages, including the attorneys' fees and costs incurred in bringing this suit and for such further and other relief as deemed just and necessary by this court.

## AS AND FOR AN ELEVENTH CAUSE OF ACTION
### (For Unjust Enrichment Against Winthrop)

181.   Aurora repeats each of the allegations set forth in Paragraphs 1 through 180 as though more fully set forth herein.

182.   As set forth above, Winthrop received funds from each of the refinance transactions, which represented, in part, the amount for the premiums associated with the issuance of title policies insuring both the Unit 7C Mortgage and the Unit 5F Mortgage.

183.   Despite receiving the premiums, Winthrop failed to forward the premiums to United General and failed to issue final title policies insuring each of the mortgages.

184.   Winthrop has been unjustly enriched by retaining the settlement proceeds from the closing that were to pay the premiums for the title policies.

WHEREFORE, Aurora demands that a judgment be entered against Winthrop for compensatory damages, including the attorneys' fees and costs incurred in bringing this suit and for such further and other relief as deemed just and necessary by this court.

## AS AND FOR A TWELFTH CAUSE OF ACTION
### (For Fraud Against Sadek And FFE)

185.   Aurora repeats each of the allegations set forth in Paragraphs 1 through 184 as

22

though more fully set forth herein.

186.    Sadek at all relevant times was the CEO of FFE.

187.    Upon information and belief, Sadek at all relevant times was a principal of Winthrop and the Closing Network.

188.    Aurora's predecessor-in-interest, LBB, purchased the Unit 7C Note, Unit 7C Mortgage, Unit 5F Note and Unit 5F Mortgage from FFE.

189.    FFE represented to LBB that both the Unit 7C Mortgage and the Unit 5F Mortgage were first mortgages on each of the condominium units.

190.    FFE further represented that both the Unit 7C Mortgage and the Unit 5F Mortgage were insured by title insurance policies.

191.    These representations were made by FFE and/or Sadek to induce LBB to purchase the notes and mortgages from FFE.

192.    At the time the representations were made, FFE and/or Sadek knew that the Unit 7C Mortgage and the Unit 5F Mortgage were not recorded.

193.    At the time the representations were made, FFE and/or Sadek knew that final title policies had not been issued covering the liens on either of the condominium units.

194.    LBB relied upon the representations made by FFE and/or Sadek and purchased the notes and mortgages from FFE.

195.    Aurora, as assignee of LBB, has been damaged based upon the misrepresentations made by FFE and/or Sadek.

196.    As set forth in detail above, Aurora's interests in the properties are currently unsecured and potentially impaired by subsequent liens that attached to the properties.

WHEREFORE, Aurora demands that a judgment be entered against FFE and Sadek for

compensatory and punitive damages, including the attorneys' fees and costs incurred in this action, and for such further and other relief as this court deems just and necessary.

## AS AND FOR A THIRTEENTH CAUSE OF ACTION
### (For Fraud Against Sadek, FFE and 7C LLC)

197.    Aurora repeats each of the allegations set forth in Paragraphs 1 through 196 as though more fully set forth herein.

198.    With full knowledge of the existence of the Unit 7C Mortgage, Sadek, on behalf of 7C LLC, obtained an additional loan from FFE for the sum of $650,000.00, which was secured by the 7C LLC Mortgage.

199.    The 7C LLC Mortgage was recorded against Unit 7C before the recording of the Unit 7C Mortgage.

200.    FFE, as the originator of the Unit 7C Mortgage, had full knowledge of the existence of the Unit 7C Mortgage at the time it originated the 7C LLC Mortgage.

201.    Sadek, FFE and 7C LLC knew that the 7C LLC Mortgage was intended to be a second mortgage on Unit 7C.

202.    FFE subsequently sold the 7C LLC Mortgage to WMB, which is now held by Chase.

203.    In the event that the lien held by Chase is determined to have priority over Aurora's interest in Unit 7C, said priority is the direct result of a fraud perpetrated by Sadek, FFE and/or 7C LLC.

204.    To the extent that FFE, Sadek and/or 7C LLC made representations to WMB that the 7C LLC Mortgage was intended to be a first lien on Unit 7C, said representations were made with the knowledge that they were false.

205.    Such representations were made to induce WMB to purchase the note and

24

mortgage from FFE.

206.   As a result of the material misrepresentations, including the disclosure of the existence of the Unit 7C Mortgage, Aurora, as an assignee, has been damaged.

207.   In particular, the Unit 7C Mortgage is impaired to the extent that the 7C LLC Mortgage has priority over the Unit 7C Mortgage.

WHEREFORE, Aurora demands that a judgment be entered against FFE, Sadek, and/or 7C LLC for compensatory and punitive damages, including the attorneys' fees and costs incurred in this action, and for such further and other relief as this court deems just and necessary.

Tompkins, McGuire, Wachenfeld & Barry, LLP
*Attorneys for Plaintiff Aurora Loan Services LLC*

Dated: April ____, 2010

William C. Sandelands, Esq.