SUPERIOR COURT BERGEN COUNTY
FILED

Philip B. Seaton, Esquire
Jonathan Scott Goldman, Esquire
BLANK ROME LLP
Woodland Falls Corporate Park
210 Lake Drive East, Suite 200
Cherry Hill, New Jersey 08002
(856) 779-3600
Attorneys for Plaintiff, Washington Mutual Bank

FEB 1 5 2008



DEPUTY CLERK

| | |
|---|---|
| WASHINGTON MUTUAL BANK, | SUPERIOR COURT OF NEW JERSEY |
| | BERGEN COUNTY |
| Plaintiff, | CHANCERY DIVISION |
| | GENERAL EQUITY |
| v. | |
| FIRST FINANCIAL EQUITIES, INC. | CIVIL ACTION |
| and | DOCKET NO. $C-69-08$ |
| DAVID SADEK | |
| and | **VERIFIED COMPLAINT** |
| ETTY SADEK | |
| and | |
| 100 W. 58TH ST. #7C LLC | |
| and | |
| JOHN DOES 1-20 | |
| and | |
| JOHN DOE INCS 1-20, | |
| Defendants. | |

DATE FILED
BATCH #
PAYMENT #
CA CK CC MO CG
PAYOR
AMOUNT
OVER

Plaintiff Washington Mutual Bank ("Plaintiff"), by way of Complaint against Defendants

First Financial Equities, Inc. ("First Financial"), David Sadek ("Mr. Sadek"), his wife, Etty

Sadek ("Mrs. Sadek"), and 100 W. 58th St. #7C LLC ("#7C LLC") says:

## NATURE OF ACTION

1.    First Financial and its primary executive officer, Mr. Sadek, obtained funds from
and guaranteed the repayment of millions of dollars to Plaintiff which First Financial loaned to
third parties by originating and brokering the sale of residential mortgage loans. First Financial
and Mr. Sadek converted a portion of these funds for their own use, without repaying them to
Plaintiff. In addition, First Financial and Mr. Sadek committed fraud by knowingly making
improper and unauthorized loans, failing to conduct proper due diligence, failing to record
mortgages, hiding loans to family members, and making other misrepresentations to Plaintiff.

2.    In addition, Mrs. Sadek entered into a conspiracy with Mr. Sadek and First
Financial to defraud Plaintiff in connection with a mortgage in favor of Plaintiff on their home as
collateral for his obligations.

3.    Further, #7C LLC, Mr. Sadek and First Financial fraudulently obtained and
converted funds from Plaintiff through #7C LLC.

## PARTIES

4.    Plaintiff is a federal association with its principal place of business located in
Henderson, Nevada.

5.    First Financial is a New York corporation with its principal office at 25
Rockwood Place, Englewood, New Jersey in Bergen County.

6.    David Sadek is an individual residing at 635 Norfolk Street in Teaneck, New
Jersey in Bergen County ("Sadek Home) who, at all relevant times, was the primary executive

2

officer of, and a shareholder of, First Financial.

7.     ~~Etty Sadek is an individual residing at the Sadek Home who, at all relevant times,~~

is and was the wife of David Sadek and the owner or co-owner of the Sadek Home.

8.     100 W. 58th St. #7C LLC is an LLC of which the sole member is Mr. Sadek.

9.     John Does 1-20 are other individuals, not yet named, including but not limited to

employees of First Financial and/or family members of David Sadek, who participated in the

unlawful acts described herein.

10.    John Doe, Inc.s 1-20 are other corporate or other entities, not yet named, which

participated in the unlawful acts described herein.

## JURISDICTION AND VENUE

11.    Jurisdiction and venue are proper in Bergen County because First Financial, Mr.

Sadek and Mrs. Sadek reside in Bergen County and the actions and/or inactions giving rise to

this Complaint took place in Bergen County.  R. 4:3-2.

## FACTS

### The Business Arrangement

12.    First Financial was in the business of originating or brokering the sale of

residential mortgage loans, and Plaintiff is a federal association that, among other things,

provides warehouse lines of credit and purchase facilities for residential mortgage bankers.  See,

Affidavit of Dominic J. Aprile at ¶¶ 4, 6, attached hereto as Exhibit "A."

13.    Plaintiff was one of First Financial's financing sources pursuant to two

arrangements: (a) an Amended and Restated Warehouse Credit and Security Agreement, which

was dated as of May 28, 2003 and amended and otherwise modified from time to time

("Warehouse Agreement"), attached hereto as Exhibit "B," and (b) a Mortgage Loan Purchase

and Sale Agreement, which was dated November 24, 2004 and amended or otherwise modified

3

from time to time ("Flex Agreement"), attached hereto as Exhibit "C," (collectively,

"Contracts"). Exhibit "A" at ¶ 7.

14.    Mr. Sadek personally guaranteed, as surety, all of First Financial's obligations and

liabilities owing to Plaintiff under the Contracts. See Warehouse Agreement Guaranty

Agreement, attached hereto as Exhibit "D," and Flex Agreement Guaranty Agreement, attached

hereto as Exhibit "E." Exhibit "A" at ¶ 8.

15.    First Financial's business model, as it concerned Plaintiff, typically operated as

follows:

- a.    First Financial found a potential residential mortgage loan customer who needed a residential mortgage loan, (Exhibit "A" at ¶ 9a);

- b.    First Financial performed due diligence on the potential customer pursuant to the Contracts, (Exhibit "A" at ¶ 9b);

- c.    To fund the origination of the mortgage loan, First Financial obtained funds from Plaintiff pursuant to the Contracts, (Exhibit "A" at ¶ 9c);

- d.    Within a short period of time (customarily known as the warehouse period within the mortgage banker finance industry), First Financial then sought to sell the mortgage loan on the secondary market to a loan purchaser, or takeout investor, (Exhibit "A" at ¶ 9d); and

- e.    At the time of such sale, amounts paid by the loan purchaser or takeout investor would be remitted to Plaintiff to repay the amounts owing with respect to such mortgage loan. (Exhibit "A" at ¶ 9e).

16.    As the mortgage loan originator, First Financial would conduct the following, or engage third party service providers to conduct the following: (a) obtain title searches and title

4

policies, (b) handle the loan closing, (c) record the mortgage and (d) deliver the original loan documents to the financing source. Exhibit "A" at ¶ 10.

17.    First Financial also engaged a third party servicing company, Loan Care, to service mortgage loans it originated until the ultimate sale to a loan purchaser or takeout investor. Loan Care would collect principal and interest payments and tax and insurance payments from the mortgage loan borrower (which amounts typically would be remitted to First Financial prior to being remitted to the appropriate funding source, including Plaintiff pursuant to the Contracts). Exhibit "A" at ¶ 11.

18.    Pursuant to the Contracts, Plaintiff would only provide funds for mortgages on owner-occupied properties and would not provide funds for construction loans. Under the Flex Agreement, Plaintiff only would provide funds to First Financial for an occupied, "single parcel of real property with a detached single family residence erected thereon, or a two-to-four family dwelling, or an individual condominium unit in a condominium project, or an individual unit in a planned unit development [with n]o portion of the Mortgaged Property [being] used for commercial purposes." See Annex 2 to the Flex Agreement, "Representations and Warranties Concerning Mortgage Loans," Exhibit C, at page 3, ¶ 11, page 13, ¶ 54, also attached separately as Exhibit "F" hereto. Construction loans were prohibited. See Annex 2 to the Flex Agreement, "Representations and Warranties Concerning Mortgage Loans," Exhibit C at page 4 ¶ 18, also attached separately as Exhibit "G" hereto. Similarly, under the Warehouse Agreement, Plaintiff would only provide funds to First Financial for underlying mortgage loans which met specific requirements, such as the mortgage loan being secured by "a First Mortgage or Second Mortgage on residential real property consisting of land and a one to four family dwelling thereon ... which is completed and ready for occupancy." See definition of "Mortgage" from the Definitions

5

section of the "Warehouse Agreement," Exhibit "B" at page 10, also attached separately as Exhibit "H" hereto. In addition, the Contracts stated that Plaintiff would not provide funds to First Financial for the origination of construction loans or commercial loans. See definition of "Eligible Mortgage Loan" from the Definitions section of the "Warehouse Agreement," Exhibit "B" at page 5, also attached separately as Exhibit "I" hereto. Exhibit "A" at ¶ 12.

19.    Under the Contracts, Plaintiff agreed to advance funds to First Financial up to $2,000,000 in the aggregate to permit First Financial to originate mortgage loans to Mr. Sadek or his family members ("Sublimit"). See November 1, 2005, Ninth Amendment to Warehouse Agreement at ¶ 2.(b)(f) and February 7, 2006, Ninth Amendment to Warehouse Agreement at ¶ 2.(b)(g), attached collectively hereto as Exhibit "J." Exhibit "A" at ¶ 13.

## The Failure of First Financial

20.    Beginning in the second quarter of 2006, First Financial began to experience financial difficulties. During this time, First Financial was unable to sell mortgage loans on the secondary market within the time frames required by the Contracts, causing these mortgage loans to become "aged." See definition of "Aged Mortgage Loans" as "Eligible Mortgage Loan that has been included in Collateral for a period of more than 90 days" from the Definitions section of the "Warehouse Agreement," Exhibit "B" at page 2, also attached separately hereto as Exhibit "K." Exhibit "A" at ¶ 14.

21.    Under the Contracts, First Financial was required to repay all or a portion of amounts owing to Plaintiff with respect to the "aged" mortgage loans. See paragraph 2.5(d) of the "Warehouse Agreement," Exhibit "B" at page 20-21, also attached separately as Exhibit "L" hereto. See also, paragraph 8 of the "Flex Agreement," Exhibit "C" at 21-23 and paragraph 5 to Annex 4 of the "Flex Agreement," Exhibit "C" at page 2, also attached collectively as Exhibit

6

"M" hereto. Exhibit "A" at ¶ 15.

## The Inducement of Washington Mutual to Continue Extending Funds

22. Given these developments and various outstanding events of default under the Contracts, on or about Tuesday, November 28, 2006, Plaintiff's employees, Andrew Currie and Dominic Aprile ("Mr. Aprile"), traveled to First Financial's principal place of business in Englewood, New Jersey to meet with Mr. Sadek and investigate the situation. Exhibit "A" at ¶ 16.

23. At this time, Plaintiff demanded all information from First Financial regarding outstanding loans, including but not limited to complete mortgage files and servicing tapes, information and documentation Plaintiff was entitled to under the Contracts. See paragraph 6.5 of the "Warehouse Agreement," Exhibit "B" at page 39 and paragraph 13.3 of the "Flex Agreement," Exhibit "C" at page 29, also attached collectively as Exhibit "N" hereto. Exhibit "A" at ¶ 17.

24. However, First Financial did not produce all of this requested information. Therefore, Plaintiff told Mr. Sadek that any future funds from Plaintiff would have to be on a "take out" basis, meaning that First Financial would have to secure a secondary buyer for any mortgage before Plaintiff would provide funds to First Financial under the Contracts. Exhibit "A" at ¶ 18.

25. To induce Plaintiff to continue to provide funds to First Financial under the Contracts, on Tuesday, November 28, 2006, Mr. Sadek personally promised to provide $3.5 Million in cash collateral by 2:00 p.m., Friday December 1, 2006. A written contract was executed memorializing the inducement and signed on November 29, 2006. A copy of this Collateral Agreement is attached hereto as Exhibit "O." Exhibit "A" at ¶ 19.

7

26.     Relying on Mr. Sadek's inducement of $3.5 Million in cash collateral, Plaintiff

continued to provide funds to First Financial pursuant to the Contracts. However, on Friday,

December 1, Mr. Sadek told Plaintiff that he would not deliver the cash collateral promised.

Exhibit "A" at ¶ 20.

27.     Plaintiff, therefore, told Mr. Sadek that it would no longer provide additional

funds to First Financial under the Contracts and, in fact, Plaintiff ceased doing so immediately.

Exhibit "A" at ¶ 21.

28.     As a consequence of the misrepresentations and inducements of First Financial

and Mr. Sadek, Plaintiff provided additional funds to First Financial of which approximately

$2.3 Million plus interest and fees has not been repaid to Plaintiff. See Spreadsheet of Unpaid

Loan Fundings From 11-28-06 to 12-4-06 attached hereto as Exhibit "P." Exhibit "A" at ¶ 22.

29.     Had Plaintiff known on that Tuesday, November 28, 2006 that Mr. Sadek would

be unable to provide the cash collateral he promised, Plaintiff would have immediately ceased

providing funds to First Financial. Exhibit "A" at ¶ 23.

## The Investigation of First Financial

30.     Almost every business day for about the next month, and periodically after that,

with First Financial's and Mr. Sadek's consent, Mr. Aprile and various of his co-workers met

with First Financial's employees, and Plaintiff attempted to access mortgage files and other

records to investigate Mr. Sadek and First Financial's general business practices and operations

("Investigation"). Exhibit "A" at ¶ 24.

31.     During this process, Mr. Aprile met with many employees of First Financial,

including Glenn Bromley, Mario Landolfi and Richard Semanchik, who told Plaintiff about First

Financial's business practices and operations. Through this Investigation and thereafter, Plaintiff

8

discovered numerous acts of conversion, fraud, and breaches of the Contracts, including but not

limited to, (Exhibit "A" at ¶ 25):

a.   At Mr. Sadek's direction, First Financial failed to remit funds to Plaintiff
     with respect to nine mortgage loans paid off by the underlying mortgage
     borrower, (Exhibit "A" at ¶ 25a);

b.   Mr. Sadek and First Financial induced Plaintiff to extend funds for a
     mortgage loan to an LLC by misrepresenting that the LLC held title to the
     property against which it sought the mortgage (even though it did not) and
     by failing to disclose that Mr. Sadek was a member and the sole member
     of the LLC, (Exhibit "A" at ¶ 25b);

c.   First Financial, Mr. Sadek, and his wife, Etty Sadek ("Mrs. Sadek"),
     induced Plaintiff to provide additional accommodations to First Financial
     by knowingly misrepresenting that they would provide Plaintiff a fourth
     mortgage allowing for approximately $1.4 Million in equity on Mr. and
     Mrs. Sadek's home at 635 Norfolk Street in Teaneck, New Jersey (the
     "Sadek Home") even though Mr. and Mrs. Sadek had signed and recorded
     an undisclosed fourth mortgage securing an additional $2.7 Million
     obligation which only was recorded the day before Mrs. Sadek signed the
     mortgage to Plaintiff, (Exhibit "A" at ¶ 25c); and

d.   First Financial, at the direction of Mr. Sadek, routinely booked loans, such
     as construction loans, which fell outside of the Contracts; routinely
     booked loans without first performing the proper underwriting and due
     diligence; and routinely booked loans without following the proper loan

9

closing procedures including properly recording or having recorded many

mortgages for many of the mortgage loans. (Exhibit "A" at ¶ 25d).

### First Financial and Mr. Sadek's Conversion of Repayments from Mortgagors

32.　In nine instances, at the direction of First Financial, Loan Care (First Financial's

third party servicer) had collected mortgage loan payoffs and remitted them directly to First

Financial, or the payoffs had been made directly to First Financial. Nonetheless, First Financial

failed to remit these funds to Plaintiff as required by the Contracts. See spreadsheet of nine

unpaid mortgage loans attached hereto as Exhibit "Q." Exhibit "A" at ¶ 26.

33.　Plaintiff confronted Mr. Sadek who admitted that First Financial had withheld the

payoff funds from these nine loans. Plaintiff contacted Loan Care and demanded that it work

directly with Plaintiff going forward, bypassing First Financial as the "middle man." After at

first refusing to this arrangement, Mr. Sadek ultimately permitted Loan Care to deal directly with

Plaintiff. Exhibit "A" at ¶ 27.

34.　Despite repeated statements from Mr. Sadek that he and First Financial would

repay these funds, Plaintiff has never been repaid. Exhibit "A" at ¶ 28.

35.　The total of these converted funds is approximately $1.6 Million plus interest and

fees. Exhibit "A" at ¶ 29.

### First Financial's Fraudulent Loans to Mr. Sadek's Undisclosed LLC

36.　Prior to the Investigation, First Financial and Mr. Sadek had asked for special

dispensation for First Financial to make a loan to #7C LLC. In so doing, First Financial and Mr.

Sadek represented to Plaintiff that #7C LLC owned condominium unit #7C of the building

located at 100 W. 58th St., New York, NY (the "Unit"). Exhibit "A" at ¶ 30.

37.　Plaintiff provided funds to First Financial to make a mortgage loan to #7C LLC

10

based on First Financial and Mr. Sadek's representation that the LLC owned the Unit and the mortgage loan, in other respects, was proper under the Contracts. Exhibit "A" at ¶ 31.

38.    Upon acquiring this special approval, First Financial obtained $637,000 from Plaintiff to loan to #7C LLC. Exhibit "A" at ¶ 32.

39.    However, later, Plaintiff learned from First Financial and Mr. Sadek that Mr. Sadek, himself, was the sole member of #7C LLC, a material fact which First Financial and Mr. Sadek failed to disclose to Plaintiff previously. At the time First Financial and Mr. Sadek sought approval for the mortgage loan to #7C LLC, Mr. Sadek had used up his Sublimit under the Contracts such that Plaintiff had refused to provide any additional funds to him. Therefore, had Mr. Sadek disclosed that he was a member of #7C LLC, Plaintiff would have denied First Financial the special approval to provide funds for this mortgage loan. Exhibit "A" at ¶ 33.

40.    Furthermore, Plaintiff recently has learned that #7C LLC did not — and still does not — hold legal title to the Unit against which it obtained the $637,000 from Plaintiff. Exhibit "A" at ¶ 34.

41.    Mr. Sadek and First Financial were aware when they sought the funds from Plaintiff that Mr. Sadek was the sole member of #7C LLC and that #7C LLC did not hold legal title to the Unit. Nonetheless, Mr. Sadek and First Financial withheld the material fact that Mr. Sadek was the sole member #7C LLC and made the fraudulent and material misrepresentation to Plaintiff that #7C LLC owned the Unit in question in order to induce Plaintiff to fund Mr. Sadek's mortgage loan of $637,000. Exhibit "A" at ¶ 35.

42.    None of $637,000 or interest or fees has been repaid to Plaintiff. Exhibit "A" at ¶ 36.

11

## First Financial's Other Breaches of the Contracts

43.    Throughout the Investigation, Plaintiff learned of numerous other breaches of the Contracts related to the general business practices of First Financial and Mr. Sadek. Exhibit "A" at ¶ 37.

44.    For example, at the direction of Mr. Sadek, First Financial routinely booked loans without following the proper loan closing procedures. First Financial failed to record or have recorded many mortgages for many of the mortgage loans. See Spreadsheet of Unrecorded Mortgages attached hereto as Exhibit "R." This makes the underlying mortgage loan an unsecured loan. Exhibit "A" at ¶ 38.

45.    Plaintiff also learned that, at the direction of Mr. Sadek, First Financial routinely booked loans which fell outside of the Contracts, and routinely booked loans without first performing the proper underwriting and due diligence. In many cases, Mr. Sadek and First Financial would obtain funds from Plaintiff and have an employee document the mortgage loan file after the fact. Exhibit "A" at ¶ 39.

46.    During the Investigation, Mr. Aprile decided to drive by some of the properties for which First Financial had originated mortgage loans. Certain of these properties clearly were under construction or renovation. Some of these properties clearly were investment properties which were not inhabited at the time of the Investigation or the loan. See Spreadsheet of Advances Made on Partially Completed Homes attached hereto as Exhibit "S." Exhibit "A" at ¶ 40.

47.    Properties such as these were not permitted for funding under the Contracts which only permitted First Financial to obtain funds from Plaintiff for mortgages on owner-occupied properties and prohibited funds for construction loans. See Annex 2 to the Flex Agreement,

12

"Representations and Warranties Concerning Mortgage Loans," Exhibit C at page 3, ¶11, page

13, ¶ 54, also attached separately as Exhibit "F"; Annex 2 to the Flex Agreement,

"Representations and Warranties Concerning Mortgage Loans," Exhibit C at page 4 ¶18, also

attached separately as Exhibit "G" hereto; definition of "Mortgage" from the Definitions section

of the "Warehouse Agreement," Exhibit "B" at page 10, also attached separately as Exhibit "H"

hereto; and definition of "Eligible Mortgage Loan" from the Definitions section of the

"Warehouse Agreement," Exhibit "B" at page 5, also attached separately as Exhibit "I" hereto.

Exhibit "A" at ¶ 41.

48.     Had Plaintiff known that these mortgages were in violation of the Contracts,

Plaintiff would not have provided these funds to First Financial. Exhibit "A" at ¶ 42.

49.     Of the total amount of monies provided to First Financial for such properties,

approximately $720,800 plus interest and fees has not been recovered by Plaintiff. Exhibit "A"

at ¶ 43.

## Plaintiff's Mortgage on David and Etty Sadek's House

50.     In late January of 2007, in an attempt to resolve this matter amicably and provide

Plaintiff additional collateral for the obligations of both First Financial and Mr. Sadek under the

Contracts, Mr. Sadek indicated that Plaintiff could obtain a mortgage on the Sadek Home. A

copy of the Mortgage Security Agreement and Fixture Filing, signed by Mrs. Sadek, is attached

hereto as Exhibit "T." Exhibit "A" at ¶ 44.

51.     First Financial and Mr. Sadek represented to Plaintiff that it would have a fourth

mortgage on the Sadek Home, which already had various mortgages on it securing

approximately $1.8 Million of debt. Exhibit "A" at ¶ 45.

52.     On March 6, 2007, Plaintiff obtained the mortgage from Mrs. Sadek relying on

13

the representation that it would hold a fourth mortgage on the Sadek Home such that there was approximately $1.4 Million of equity in the home. Exhibit "A" at ¶ 46.

53.    However, when the title company recorded the mortgage on the Sadek Home, it found that Plaintiff's mortgage was the fifth, not the fourth, mortgage. A copy of Title Report for the Sadek Home is attached hereto as Exhibit "U." Exhibit "A" at ¶ 47.

54.    On March 5, 2007, the day before Mrs. Sadek mortgaged the Sadek Home to Plaintiff, a fourth mortgage had been recorded on the Sadek Home. This approximately $2.7 Million mortgage had been signed by Mr. and Mrs. Sadek on January 19, 2007, prior to the fraudulent representation to Plaintiff that Plaintiff would have the fourth mortgage on the Sadek Home. Exhibit "U." Exhibit "A" at ¶ 48.

55.    Therefore, the representation to Plaintiff that it would have a fourth mortgage on the Sadek Home with sufficient equity, was knowingly false and intended to induce Plaintiff to provide additional accommodations to First Financial and Mr. Sadek. Exhibit "A" at ¶ 49

### First Financial's Deficiency and Current Financial Situation

56.    It is Plaintiff's right under the Contracts that First Financial repurchase all of the mortgage loans and pay Plaintiff the current outstanding obligations owing from them. Exhibit "A" at ¶ 50.

57.    However, Mr. Sadek has represented to Plaintiff that neither he nor First Financial has the assets necessary to pay Plaintiff for their outstanding obligations. Exhibit "A" at ¶ 51.

58.    Plaintiff has legal title to the outstanding mortgage loans funded under the Flex Agreement (which are the vast majority of the loans at issue), and Plaintiff has an option to retain ownership of these outstanding loans, setting a value for them and requiring First Financial to pay it the deficiency. Plaintiff has done this. Exhibit "A" at ¶ 52.

14

59.    Based on the valuation, First Financial's net deficiency as of 12/31/2007 is approximately $4.2 Million. Exhibit "A" at ¶ 53.

60.    Although Plaintiff owns outstanding loans under the Flex Agreement, this is not the case under the Warehouse Agreement. First Financial continues to own the three loans made under the Warehouse Agreement (subject to Plaintiff's lien), and Plaintiff demands that ownership of these loans be transferred to it in Count III of this Verified Complaint. Exhibit "A" at ¶ 54.

61.    Plaintiff has been working in good faith along with counsel since October, 2006 with First Financial and Mr. Sadek to resolve this matter. During this time, Mr. Sadek and/or his representatives have repeatedly canceled, postponed or simply failed to attend scheduled meetings and telephone calls. In addition, it recently has come to light that First Financial and Mr. Sadek were making misrepresentations to Plaintiff in the negotiation. In retrospect, First Financial and Mr. Sadek were not acting in good faith, but rather were engaging in tactics of delay. Exhibit "A" at ¶ 55.

62.    Plaintiff believes that First Financial and Mr. Sadek have attempted to liquidate and/or hide their assets from Plaintiff and from this Court. If this is the case, Plaintiff has been further harmed by reliance on what it thought was a good faith attempt by First Financial and Mr. Sadek resolve this matter, but which may, in retrospect, merely have been further subterfuge. Exhibit "A" at ¶ 56.

## COUNT I – INJUNCTIVE RELIEF
### Against All Defendants

63.    Plaintiff repeats all of the foregoing paragraphs as if set forth at length herein.

64.    The Defendants have committed numerous wrongful acts.

65.    The assets of First Financial and Mr. Sadek are fast dissipating and/or are likely

15

being hidden from creditors.

66.    ~~It is believed, in particular, that because the business of First Financial and David Sadek is collapsing and/or has collapsed so rapidly, that relevant electronic and paper documents, computers, books and financial records are at risk of being altered or forever lost or destroyed.~~

WHEREFORE, Plaintiff Washington Mutual Bank, respectfully requests that this Court grant Plaintiff injunctive relief as follows:

(1)    Prohibiting all Defendants and employees or others under their control from taking any action to change, amend, alter, dispose of, redact, destroy, delete or otherwise disturb any financial books or records, or documents or other materials whether electronic or otherwise, in any way related to funds extended by Plaintiff or mortgages made by First Financial to any and all borrowers;

(2)    Restraining and enjoining all Defendants from converting, transferring, selling, encumbering, dissipating, borrowing from, withdrawing or otherwise compromising any asset titled in either of their names or held for either of their benefit pending further Order of the Court; and

(3)    Other relief as this Court deems equitable and just.

## COUNT II – CONSTRUCTIVE TRUST
## Against All Defendants

67.    Plaintiff repeats all of the foregoing paragraphs as if set forth at length herein.

68.    The Defendants have committed numerous wrongful acts.

69.    These wrongful acts transferred or diverted property that rightfully belongs to Plaintiff, thereby unjustly enriching themselves.

WHEREFORE, Plaintiff Washington Mutual Bank, respectfully requests that this Court

16

place the assets of all Defendants into a constructive trust to protect all assets presently titled in

the names of any or all of the Defendants individually, jointly with another, or held for their

benefit, and grant such other relief as this Court deems equitable and just.

## COUNT III – EQUITABLE RELIEF
### Against First Financial

70.  Plaintiff repeats all of the foregoing paragraphs as if set forth at length herein.

71.  The First Financial has committed numerous wrongful acts.

72.  The assets of First Financial are fast dissipating and/or are likely being hidden

from creditors.

73.  Pursuant to the Flex Agreement, Plaintiff has taken ownership of the mortgage

loans which were funded by Plaintiff under the Flex Agreement.

74.  However, First Financial still retains possession of several mortgage loans which

were funded by Plaintiff under the Warehouse Agreement.

WHEREFORE, Plaintiff Washington Mutual Bank, respectfully requests that this Court

transfer ownership to Plaintiff of any and all mortgage loans which were funded by Plaintiff

under the Warehouse Agreement, and grant such other relief as this Court deems equitable and

just.

## COUNT IV – CONVERSION / MISAPPROPRIATION
### Against First Financial and David Sadek

75.  Plaintiff repeats all of the foregoing paragraphs as if set forth at length herein.

76.  First Financial and Mr. Sadek received monies on at least eight Plaintiff loans

which had been paid off to First Financial, either by direct payment by the mortgagor or through

refinancing.

77.  Though these monies belong to Plaintiff, First Financial and Mr. Sadek

17

improperly took dominion and control over them, neither returning them to Plaintiff nor

informing Plaintiff that the monies had been paid to them, thereby converting them under the

law.

78. To this day, First Financial and Mr. Sadek have not returned these monies to

Plaintiff.

WHEREFORE, Plaintiff Washington Mutual Bank, demands judgment against the First

Financial and David Sadek, jointly and severally, awarding Plaintiff compensatory and punitive

damages, interest, reasonable costs and attorneys fees, and such other relief as this Court deems

equitable and just.

## COUNT V– CONVERSION / MISAPPROPRIATION
### Against First Financial, David Sadek and 100 W. 58ᵗʰ St. #7C LLC

79. Plaintiff repeats all of the foregoing paragraphs as if set forth at length herein.

80. First Financial, Mr. Sadek and #7C LLC sought and received special dispensation

from Plaintiff for First Financial to make a loan to #7C LLC.

81. First Financial, Mr. Sadek and #7C LLC knowingly and materially

misrepresented that #7C LLC owned condominium unit #7C of the building located at 100 W.

58ᵗʰ St., New York, NY (the "Unit") and failed to disclose that Mr. Sadek was a member and/or

the sole member of #7C LLC at the time.

82. Based on the above material misrepresentations and omissions, Plaintiff agreed to

extend $637,000 in funds to First Financial which made a loan to #7C LLC secured by the Unit.

83. First Financial, Mr. Sadek and #7C LLC improperly took dominion and control

over these monies.

84. To this day, First Financial, Mr. Sadek and #7C LLC have not returned these

monies to Plaintiff.

18

WHEREFORE, Plaintiff Washington Mutual Bank, demands judgment against First

Financial, David Sadek and #7C LLC, jointly and severally, awarding Plaintiff compensatory

and punitive damages, interest, reasonable costs and attorneys fees, and such other relief as this

Court deems equitable and just.

## COUNT VI – FRAUD / INTENTIONAL MISREPRESENTATION
### Against All Defendants

85.   Plaintiff repeats all of the foregoing paragraphs as if set forth at length herein.

86.   Throughout the time period in question the Defendants repeatedly, knowingly and

intentionally lied to, deceived and misrepresented various facts to Plaintiff and its

representatives.

87.   Plaintiff justifiably relied on these knowing misrepresentations, thereby extending

funds and accepting a mortgage on the Sadek Home that it otherwise would not have, to its

detriment.

88.   As a result of its justifiable reliance on the numerous knowing misrepresentations

of the Defendants Plaintiff has been harmed.

WHEREFORE, Plaintiff Washington Mutual Bank, demands judgment against all

Defendants, jointly and severally, awarding Plaintiff compensatory and punitive damages, treble

damages, interest, reasonable costs and attorneys fees, and such other relief as this Court deems

equitable and just.

## COUNT VII – BREACH OF CONTRACT
### Against First Financial and David Sadek

89.   Plaintiff repeats all of the foregoing paragraphs as if set forth at length herein.

90.   First Financial and Mr. Sadek have legal duties under the Contracts.

91.   First Financial and Mr. Sadek have breached and completely disregarded their

19

duties by, among other things: failing to remit funds to Plaintiff with respect to nine mortgage loans paid off by the underlying mortgage borrower; inducing Plaintiff to extend funds for a mortgage loan to an LLC by affirmatively misrepresenting that the LLC held title to the property against which it sought the mortgage (even though it did not) and by failing to disclose that Mr. Sadek was a member and the sole member of the LLC; inducing Plaintiff to provide additional accommodations to First Financial by knowingly misrepresenting that they would provide Plaintiff a fourth mortgage allowing for approximately $1.4 Million in equity on the Sadek Home even though Mr. and Mrs. Sadek had signed and recorded an undisclosed fourth mortgage securing an additional $2.7 Million obligation which only was recorded the day before Mrs. Sadek signed the mortgage to Plaintiff; and routinely booking loans, such as construction loans, which fell outside of the Contracts; routinely booking loans without first performing the proper underwriting and due diligence; and routinely booking loans without following the proper loan closing procedures including properly recording or having recorded many mortgages for many of the mortgage loans.

92.     As a result of First Financial and Mr. Sadek's breaches of their duties under the Contracts, Plaintiff has been harmed.

WHEREFORE, Plaintiff Washington Mutual Bank, demands judgment against First Financial and David Sadek, jointly and severally, awarding Plaintiff compensatory damages, punitive damages, interest, reasonable costs and attorneys fees, and such other relief as this Court deems equitable and just.

## COUNT VIII – BREACH OF COVENANT OF GOOD FAITH AND FAIR DEALING
### Against First Financial and David Sadek

93.     Plaintiff repeats all of the foregoing paragraphs as if set forth at length herein.

94.     First Financial and Mr. Sadek have legal duties under the Contracts.

20

95.    Among these legal duties is adherence to the implied covenant of good faith and fair dealing.

96.    First Financial and Mr. Sadek have breached and completely disregarded these duties by, among other things: failing to remit funds to Plaintiff with respect to nine mortgage loans paid off by the underlying mortgage borrower; inducing Plaintiff to extend funds for a mortgage loan to an LLC by affirmatively misrepresenting that the LLC held title to the property against which it sought the mortgage (even though it did not) and by failing to disclose that Mr. Sadek was a member and the sole member of the LLC; inducing Plaintiff to provide additional accommodations to First Financial by knowingly misrepresenting that they would provide Plaintiff a fourth mortgage allowing for approximately $1.4 Million in equity on the Sadek Home even though Mr. and Mrs. Sadek had signed and recorded an undisclosed fourth mortgage securing an additional $2.7 Million obligation which only was recorded the day before Mrs. Sadek signed the mortgage to Plaintiff; and routinely booking loans, such as construction loans, which fell outside of the Contracts; routinely booking loans without first performing the proper underwriting and due diligence; and routinely booking loans without following the proper loan closing procedures including properly recording or having recorded many mortgages for many of the mortgage loans.

97.    As a result of First Financial and Mr. Sadek's overt and blatant breaches of the implied covenant of good faith and fair dealing under the Contracts, Plaintiff has been harmed.

WHEREFORE, Plaintiff Washington Mutual Bank, demands judgment against First Financial and David Sadek, jointly and severally, awarding Plaintiff compensatory damages, punitive damages, interest, reasonable costs and attorneys fees, and such other relief as this Court deems equitable and just.

## COUNT IX – CONSPIRACY
### Against All Defendants

98. Plaintiff repeats all of the foregoing paragraphs as if set forth at length herein.

99. All Defendants have acted in concert and with knowledge to commit the

foregoing acts.

100. As a result, all Defendants conspired to commit acts of conversion, fraud and

misappropriation of monies from Plaintiff, and to breach the Contracts and fiduciary duties owed

to Plaintiff.

101. As a result of this conspiracy of all of the Defendants, Plaintiff has been harmed.

WHEREFORE, Plaintiff Washington Mutual Bank, demands judgment against all

Defendants, jointly and severally, awarding Plaintiff compensatory and punitive damages,

interest, reasonable costs and attorneys fees, and such other relief as this Court deems equitable

and just.

## COUNT X – BREACH OF CONTRACT / FORECLOSURE
### Against David Sadek and Etty Sadek

102. Plaintiff repeats all of the foregoing paragraphs as if set forth at length herein.

103. Plaintiff holds a mortgage to the real property at 635 Norfolk Street in Teaneck,

New Jersey in Bergen County.

104. However, Mr. and Mrs. Sadek have not and are not making mortgage payments to

Plaintiff.

22

    WHEREFORE, Plaintiff Washington Mutual Bank, demands judgment against Mr. and

Mrs. Sadek, foreclosing on their secured real property and awarding Plaintiff compensatory

damages, interest, reasonable costs and attorneys fees, and such other relief as this Court deems

equitable and just.

*Philip B. Seaton*

PHILIP B. SEATON
New Jersey Resident Partner
JONATHAN SCOTT GOLDMAN
BLANK ROME LLP
A Pennsylvania LLP
Woodland Falls Corporate Park
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002
*Attorneys for Plaintiff, Washington Mutual Bank*

Dated: 2|14|08

23

## DESIGNATION OF TRIAL COUNSEL

Pursuant to Rule 4:25-4, Philip Seaton is hereby designated as trial counsel

for the Plaintiff, Washington Mutual Bank.

*Philip b. Seaton*

PHILIP B. SEATON
New Jersey Resident Partner
JONATHAN SCOTT GOLDMAN
BLANK ROME LLP
A Pennsylvania LLP
Woodland Falls Corporate Park
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002
*Attorneys for Plaintiff, Washington Mutual Bank*

Dated: 2|14|08

## CERTIFICATION

Pursuant to Rule 4:5-1, it is hereby stated that the matter in controversy is not the subject

of any other action pending in any other Court or of a pending arbitration proceeding to the best

of our knowledge and belief. To the best of our knowledge and belief, no other action or

arbitration proceeding is contemplated. Furthermore, we know of no other parties that should be

joined in the above action.

*Philip b. Seaton*

PHILIP B. SEATON
New Jersey Resident Partner
JONATHAN SCOTT GOLDMAN
BLANK ROME LLP
A Pennsylvania LLP
Woodland Falls Corporate Park
210 Lake Drive East, Suite 200
Cherry Hill, NJ 08002
*Attorneys for Plaintiff, Washington Mutual Bank*

Dated: 2/14/08

24

I, Jon Goodman, Deputy Clerk of the Superior Court of New Jersey, the same being a Court of Record, do hereby certify that the foregoing is a true copy of the *Complaint* now on file in my office.

IN TESTIMONY WHEREOF, I Have hereunto set my hand and affixed the seal of said Court at Hackensack, this 1st day of June Two thousand and eleven

Deputy Clerk of the Superior Court



## **VERIFICATION OF COMPLAINT**

I. Dominic J. Aprile, hereby certifies as follows:

1. I am a Vice President of the Mortgage Broker Finance at Washington Mutual Bank, the plaintiff in this Complaint, and I am fully familiar with the facts and circumstances regarding this matter.

2. I have read and am familiar with the allegations contained in this Complaint, and to the best of my knowledge, based on my familiarity with the facts and circumstances of this matter, the allegations contained in the Complaint are accurate and true.

3. I make this certification with full knowledge that if anything stated herein is willfully false, I am subject to punishment.

By: DOMINIC J. APRILE

Dated: February /2 , 2008

## CERTIFICATE OF SERVICE

I, Jonathan Scott Goldman, hereby certify that on February 15, 2008, I caused a true and

correct copy of Plaintiff Washington Mutual Bank's Verified Complaint, Order to Show Cause

with Temporary Restraints, and Brief in support thereof to be served upon the defendants by

hand delivery:

William N. Dimin, Esquire
Spector & Dimin, P.A.
25 Rockwood Place
Englewood, NJ 07631

By: Jonathan Scott Goldman