# TABLE OF CONTENTS

**Page No.**

PRELIMINARY STATEMENT ...................................................... 1

STATEMENT OF FACTS ........................................................ 1

    Procedural History ...................................................... 1

    Fee ................................................................... 2

    The Closing Network ..................................................... 3

    Winthrop Abstract ...................................................... 3

    Sadek's Purchase Of Unit 7C .............................................. 3

    Aurora ................................................................ 4

    Alleged $1.35 Million Loan ................................................ 4

    WAMU Mortgage On Unit 7C In the Amount
    of $650,000.00 ......................................................... 5

    Settlement Agreement .................................................... 6

    WAMU Failure ......................................................... 6

ARGUMENT ................................................................. 6

STANDARD OF REVIEW ...................................................... 6

ARGUMENT ................................................................. 7

POINT I      AURORA HAS FAILED TO PLEAD OR ESTABLISH
            THAT IT HAS STANDING ...................................... 7

POINT II    AS AN ASSIGNEE OF THE FDIC-RECEIVER,
            CHASE IS A HOLDER IN DUE COURSE .......................... 8

i

      A.      CHASE IS A HOLDER IN DUE COURSE . . . . . . . . . . . . . . . . . . . . . . 8

             1.      Chase is the Holder of the WAMU Note . . . . . . . . . . . . . . . . . . . 9
             2.      The WAMU Note is a Negotiable Instrument . . . . . . . . . . . . . . . 9
             3.      Value . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
             4.      Good Faith . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
             5.      Lack of Knowledge . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10
             6.      Protections Of A Holder In Due Course . . . . . . . . . . . . . . . . . . . 11

POINT III      SINCE NEW YORK IS A RACE NOTICE STATE,
                  CHASE'S MORTGAGE IS SUPERIOR TO AURORA'S
                  MORTGAGE BECAUSE IT WAS RECORDED FIRST . . . . . . . . . . . . . . . . . 12

POINT IV      THE COMMON LAW D'OENCH DHUME DOCTRINE OR
                  ITS STATUTORY COUNTERPART 12 U.S.C. § 1823(e)
                  INVALIDATES THE SETTLEMENT AGREEMENT . . . . . . . . . . . . . . . . . . 14

      A.      THE SETTLEMENT AGREEMENT DOES NOT
                  SATISFY THREE OF THE FOUR REQUIREMENTS
                  OF A VALID AGREEMENT PURSUANT TO
                  12 U.S.C. § 1823(e) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

             1.      The Settlement Agreement was not Executed
                    by the Depository Institution AND Aurora . . . . . . . . . . . . . . . . 16

             2.      The Settlement Agreement was not Executed
                    Contemporaneously with the Acquisition of
                    the Asset by the Depository Institution . . . . . . . . . . . . . . . . . . . 18

             3.      The Minutes of the Depository Institution's Board
                    of Directors or Loan Committee do not Reflect an
                    Approval of the Settlement Agreement . . . . . . . . . . . . . . . . . . . 19

             4.      The Settlement Agreement has not Continuously,
                    From the Time of its Execution, been an
                    Official Record of the Depository Institution . . . . . . . . . . . . . . 20

CONCLUSION . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 22

# <u>TABLE OF AUTHORITIES</u>

<u>Page No.</u>

*A.I. Trade Fin., Inc. v. Laminaciones de Lesaca, S.A.,*
41 F.3d 830, 836 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242, 247-48 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Bank of N.Y. v. Welz,*
118 Misc.2d 645, 648, 460 N.Y.S.2d 867, 870 (Sup. Ct. N.Y. Cnty. 1983) . . . . . . . . . . . . . . . 10

*Bankers Trust Company v. Litton Systems,*
599 F.2d 488 (2nd Cir. 1979) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Barkley v. Olympia Mort. Co.,*
04-cv-875, 05-cv-187, 05-cv-4386, 05-cv-5302,
05-cv-5362, 05-cv-5679, 2010 U.S. Dist. LEXIS 95060,
*72-73 (E.D.N.Y. Sept. 13, 2010) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*Beighley v. FDIC,*
868 F.2d 776, 782-83 (5th Cir. 1989) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 21

*Bell & Murphy & Assocs., Inc. v. Interfirst Bank Gateway, N.A.,*
894 F. 2d 750, 754 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Builders Equity, Inc. v. Larkport Bldg. Corp.,*
17 Misc. 2d 967, 969, 185 N.Y.S.2d 595, 596-97 (Sup. Ct. Suffolk Cnty. 1959) . . . . . . . . . . . 13

*Carpenter v. Longan,*
83 U.S. 271, 273 (1873) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

*Castleglen, Inc. v. Resolution Trust Corp.,*
984 F.2d 1571, 1576 (10th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 16, 21

*Celotex Corp. v. Catrett,*
477 U.S. 317, 322 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Chen v. Geranium Dev. Corp.,*
243 A.D.2d 708, 709, 663 N.Y.S.2d 288, 289 (App. Div. 2d Dep't 1997) . . . . . . . . . . . . . . . . 12

*D'Amico v. City of New York,*
132 F.3d 145, 149 (2d Cir. 1998) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*Dimuzio v. Resolution Trust Corp.,*
68 F.3d 777, 780 (3d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 18, 19, 21

*FDIC v. Noel,*
177 F.3d 911, 914 (10th Cir. 1999) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

*FDIC v. Krause,*
904 F.2d 463, 466 (8th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

*FDIC v. Giammettei,*
34 F.3d 51, 56 (2d Cir. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*FDIC v. Wright,*
942 F.2d 1089, 1101 (7th Cir. 1991) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*FDIC v. Gardner,*
606 F. Supp. 1484, 1487-88 (S.D. Miss. 1985) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*FDIC v. P.L.M. Int'l., Inc.,*
834 F.2d 248, 253 (1st Cir. 1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Fortunoff v. Triad Land Assocs.,*
906 F. Supp. 107, 113 (E.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Gray v. Delpho,*
97 Misc. 37, 43, 162 N.Y.S. 194, 198 (Sup. Ct. Oneida Cnty. 1916) . . . . . . . . . . . . . . . . . 12

*Harrison v. Wahatoyas, L.L.C.,*
253 F.3d 552, 559 (10th Cir. 2001) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

*Hirsch v. Arthur Andersen & Co.,*
72 F.3d 1085, 1092 (2d Cir. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

*Household Fin. Realty Corp. v. Emanuel,*
2 A.D.3d 192, 193, 769 N.Y.S.2d 511, 513 (App. Div. 1st Dep't 2003) . . . . . . . . . . . . . . . . 13

*In re Alcibiades & Irma Nunez,*
98-CV-7077, 98-CV-7078, 2000 U.S. Dist.
LEXIS 12078, *26 (E.D.N.Y. March 17, 2000) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

*In re Apponline.com, Inc.,*
285 B.R. 805, 820 (Bankr. E.D.N.Y. 2002) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Indyk v. Habib Bank, Ltd.,*
694 F.2d 54, 56 (2d Cir. 1982) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Langley v. FDIC,*
484 U.S. 86, 93-95 (1987) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16, 18, 20

*Lapis Enters., Inc. v. Int'l Blimpie Corp.,*
84 A.D.2d 286, 445 N.Y.S.2d 574 (App. Div. 2d Dep't 1981) . . . . . . . . . . . . . . . . . . . . . . . . . . 8

*LPP Mortgage, Ltd. v. The Card Corp.,*
17 A.D.3d 103, 793 N.Y.S.2d 346 (App. Div. 1st Dep't 2005) . . . . . . . . . . . . . . . . . . . . . . . . . 14

*Matsushita Electric Indus. Co. v. Zenith Radio Corp.,*
475 U.S. 574, 586 (1986) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 6

*Porras v. Petroplex Sav. Ass'n.,*
903 F.2d 379, 381 (5th Cir. 1990) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

*Regent Corp., U.S.A. v. Azmat Bangladesh, Ltd.,*
253 A.D.2d 134, 142, 686 N.Y.S.2d 24, 29 (1st Dep't 1999) . . . . . . . . . . . . . . . . . . . . . . . . . 10

*Resolution Trust Corp. v. Midwest Fed. Sav. Bank,*
36 F.3d 785, 797 (9th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

*Resolution Trust Corp. v. Ruggiero,*
977 F.2d 309, 316 (7th Cir. 1992) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 20

*Resolution Trust Corporation v. Hidden Ponds Phase IV Develop. Assocs.,*
873 F. Supp. 799, 804 (E.D.N.Y. 1995) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15, 17, 19, 20

*Resolution Trust Corp. v. Shuffield,*
No. 92-1684, 1993 U.S. App. LEXIS 306 (8th Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . 16, 19

*The Inn at Saratoga Assocs. v. FDIC,*
856 F. Supp. 111, 117 (N.D.N.Y. 1994) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 20

*The Provident Bank v. Community Home Mortgage Corp.,*
498 F. Supp. 2d 558, 567 (E.D.N.Y. 2007) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

*Wash. Mutual Bank v. Peak Health Club, Inc.,*

No. 018977/2003, 2005 N.Y. Misc. LEXIS 3392, at *6
(Sup. Ct. Nassau Cnty. 2005) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

*Young v. FDIC*,
103 F.3d 1180, 1187 (4th Cir. 1997) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 15

**Statutes**

12 U.S.C. § 1823

12 U.S.C. § 1823(e)

Fed. R. Civ. P. 56(e)

N.Y. U.C.C. § 3-104(1)

N.Y. U.C.C. § 3-302(1)

N.Y. U.C.C. § 3-302(1)(b)

N.Y. U.C.C. § 3-303

N.Y. U.C.C. § 3-304(7)

N.Y. U.C.C. § 3-305

N.Y. U.C.C. § 3-305 (1)-(2)

N.Y. Real Prop. Law §§ 290, 291

N.Y. Real Prop. Law § 291

N.Y. Real Prop. Law §§ 291, 294

N.Y. Real Prop. Law § 291

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------------------------------------x

AURORA LOAN SERVICES LLC,                         Civil Case No.: 09-CV-9651 (HB)

                         Plaintiff

    - against -

DAVID SADEK; WINTHROP ABSTRACT, LLC,
FIRST FINANCIAL EQUITIES, INC.; THE
CLOSING NETWORK, LTD.; 100 W. 58TH ST. 7C
LLC; MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.; JPMORGAN CHASE BANK, N.A.;
BOARD OF MANAGERS WINDSOR PARK
CONDOMINIUM; WINDSOW TOV LLC; FREMONT
INVESTMENT & LOAN; JOHN DOES 1-10,

                      Defendants.
-------------------------------------------------------------x

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT
## JPMORGAN CHASE BANK N.A.'S MOTION FOR SUMMARY JUDGMENT

### PRELIMINARY STATEMENT

       JPMorgan Chase Bank, N.A ("Chase"), by its attorneys Cullen and Dykman LLP, respectfully submits this memorandum of law and the affidavit of Cynthia A. Augello (the "Augello Affidavit"), sworn to June 13, 2011 (the "Augello Affidavit"), together with the exhibits annexed thereto, in support of its motion for summary judgment pursuant to Fed. R. Civ. P. 56.

### STATEMENT OF FACTS[1]

**Procedural History**

       Plaintiff Aurora Loan Services LLC ("Aurora") commenced this action with the filing of a complaint on November 19, 2009.  An Amended Complaint was filed on April 14, 2010.  The Amended Complaint asserts claims against First Financial Equities, Inc. ("FFE"); The Closing

---

[1]    All facts contained in the Statement of Fact are set forth in Chase's Statement of Material Facts ("SMF").

Network, Ltd. ("the Closing Network"); 100 W. 58th Street 7C LLC ("100 W. 58th"); Mortgage Electronic Registration Systems, Inc. ("MERS"), Chase, Board of Managers Windsor Park Condominium ("Windsor Park BOM"); Windsor Park Condominium ("Windsor Park Condo"); Windsor TOV LLC ("Windsor TOV"); Fremont Investment & Loan ("Fremont"); David Sadek; Winthrop Abstract LLC ("Windsor Abstract"); and unnamed John Does.

On June 21, 2010, the Closing Network filed an Answer to the Amended Complaint, which asserted cross-claims against all of the defendants.  On July 28, 2010 Chase filed an Answer, asserting cross-claims against FFE, David Sadek, the Closing Network, and Winthrop Abstract.  On March 2, 2011 the Closing Network filed an Amended Answer, which asserted cross-claims against Sadek and FFE.

On October 28, 2010 the Court entered a Default Judgment in favor of Aurora against 100 W. 58th, Windsor Park Condominium BOM, FFE, Fremont, MERS, Windsor Park Condo, Windsor TOV, Winthrop Abstract, and David Sadek.

**FFE**

FFE was a residential mortgage lender that sold mortgages on the secondary market. FFE was formed in 1991.  Sadek was the sole owner of FFE when it was formed.  Several other individual's obtained an ownership interest in FFE on approximately January 1, 2000.  Sadek was the president of FFE.

Mario Landolfi ("Landolfi") worked for FFE from June 2004 until March 2007.  At FFE Landolfi was director of post-closings where he would package loans originated by FFE and sell them to investors.  Landolfi had authority to execute assignments on behalf of MERS.  Landolfi is currently employed by Chase as an Assistant Vice President, Retail Loan Operations Manager. Landolfi began working for Chase in April 2008.

FFE received general underwriting requirements from prospective loan purchasers prior to closing a loan. Once the loans were underwritten, they were sold off to investors. FFE's post-closing group would go through loan documents to ensure that all of the closing documents were properly executed. Landolfi was part of that post-closing group. No group at FFE would ensure that mortgages securing notes were properly recorded. The post-closing group would not review the closing file to ensure that title insurance premiums were paid.

**The Closing Network**

FFE used the Closing Network as one of its settlement agents. FFE would prepare all closing documents and send them to the closing when the Closing Network was the settlement agent. The law firm Zucker & Kwestal owned the Closing Network. Stephen Kwestel, a lawyer at Zucker & Kwestel, obtained an ownership interest in FFE on approximately January 1, 2000. Although Kwestel was an owner of FFE, neither Kwestel or Zucker worked for FFE.

**Winthrop Abstract**

Winthrop Abstract is a title company used by FFE. Sadek's mother, Rachel Sadek, worked for Winthrop Abstract.

**Sadek's Purchase Of Unit 7C**

On or about February 21, 2006, Sadek purchased condominium Unit 7C at 100 West 58th Street, New York, NY ("Unit 7C"). To finance the purchase of 7C, on or about February 21, 2006, Sadek allegedly obtained two loans from FFE in the amounts of $995,000 and $400,000, which were allegedly secured by two mortgages in favor of FFE secured by Unit 7C (the "FFE Unit 7C Mortgages"). The FFE Unit 7C Mortgages were never recorded.

Zucker & Kwestel represented Sadek in the purchase of Unit 7C. Winthrop Abstract attended the closing for Sadek's purchase of Unit 7C. Rose Silverberg was the title closer at

Winthrop Abstract who attended the closing of the transaction when Sadek purchased Unit 7C. A deed granting title to Sadek was executed on February 21, 2006 and was given to Winthrop Abstract. The deed transferring Unit 7C to Sadek was not recorded.

## Aurora

Aurora does not actually own the 7C Note, rather the investor in the 7C loan, LSX2006-12, owns the 7C Note. Aurora is the third-party servicer for the loan. Aurora performs its servicing functions pursuant to a servicing agreement with the investor. Aurora, as servicer, simply holds the original note and mortgage for Lehman Brothers. Aurora is not the holder of the 7C Note, rather, it simply has physical access to the 7C Note.

Aurora serviced the 7C Note and mortgage loan on behalf of Lehman Brothers Bank. Despite the fact that Aurora is described as the successor-in-interest to Lehman, it is not. Aurora is a wholly owned subsidiary of Lehman Bros.

## Alleged $1.35 Million Loan

Sadek allegedly refinanced the FFE Unit 7C Mortgages through a loan from FFE in the amount of $1,350,000, which was allegedly secured by a mortgage in favor of MERS as nominee for FFE secured by Unit 7C (the "FFE Unit 7C Refinance Mortgage"). The FFE Unit 7C Refinance Mortgage was never and still is not recorded.

There is no proof that the FFE Unit 7C Refinance Mortgage loan funded, ie: that FFE disbursed any funds in connection with the 7C Refinance Mortgage loan. The Closing Network has no documents showing that any funds from the $1.35 million proceeds from the Unit 7C refinance went through the account of the Closing Network. The FFE Unit 7C Refinance Mortgage was never notarized. The Closing Network was listed as the settlement agent for FFE

Unit 7C Refinance Mortgage.   The Closing Network did not close the alleged FFE Unit 7C Refinance Mortgage.

**WAMU Mortgage On Unit 7C In The Amount Of $650,000.00**

On or about September 11, 2006, FFE advanced $650,000 to 7C LLC.   To secure the $650,000. 7C LLC, through Sadek, executed a mortgage in favor of MERS as nominee for FFE for the sum of $650,000 secured by Unit 7C (the "WAMU Mortgage").   The WAMU Mortgage was recorded on December 15, 2006.   The WAMU Mortgage was assigned to Washington Mutual by assignment dated February 2, 2007.

FFE had a warehouse line with WAMU.   100 West 58th is the mortgagor of the WAMU Mortgage.   100 West 58th executed the $650,000 Note.   Sadek is the sole member of 100 West 58th Street LLC.   The WAMU Mortgage is a first lien on the Property since there are no other recorded liens on the Property.   The HUD-1 indicates that there was no prior loan paid off and the WAMU Mortgage went to the borrower.   The funds from the WaMu Mortgage were wired into the Closing Network's bank account.   The money from the WaMu mortgage of Unit 7C was sent to FFE.

On or about February 21, 2006, Sadek purchased 100 W. 58th Street, Unit 7C.   Winthrop would have been responsible for recording the deed to Sadek and the mortgage with respect to Sadek's purchase of Unit 7C.   Winthrop did not record the deed to Sadek or the mortgage with respect to Sadek's purchase of Unit 7C.   Sadek does not have the original deed that transferred the property to himself.   Sadek does not know whether he executed a deed from himself to 100 West 58th Street 7C, LLC for the 100 West 58th unit.

**Settlement Agreement**

Sadek entered into a written settlement agreement dated September 12, 2008 among himself, his ex-wife Etty Sadek, FFE, and Washington Mutual (the "Settlement Agreement"). The $650,000 mortgage listed on page 3, Paragraph 4D refers to a loan provided by WAMU secured by 100 West 58th Street, Unit 7C. The Settlement Agreement does not list and was not signed by 100 West 58th LLC.

**WaMu Failure**

On September 25, 2008, by order of the Office of Thrift Supervision, Washington Mutual Bank was closed and the FDIC was appointed its Receiver. The FDIC sold the assets and certain liabilities of Washington Mutual to Chase that same day pursuant to a written "Purchase and Assumption Agreement". Chase acquired the WaMu Mortgage from the FDIC after WaMu went into receivership with the FDIC.

## ARGUMENT

## STANDARD OF REVIEW

Chase is entitled to judgment as a matter of law since there are no genuine issues of material fact before the Court. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). Summary judgment may be entered "against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Plaintiff may not rest upon mere allegations in his pleading. *See* FED. R. CIV. P. 56(e). Further, Plaintiff must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Electric Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986). Specifically, Plaintiff will need to proffer "some hard evidence showing that its version of the

events is not wholly fanciful." *D'Amico v. City of New York*, 132 F.3d 145, 149 (2d Cir. 1998). It is respectfully submitted that Plaintiff will be unable to survive summary judgment.

## ARGUMENT

## POINT I

## AURORA HAS FAILED TO PLEAD OR ESTABLISH THAT IT HAS STANDING

The Amended Complaint states that Lehman Brothers Bank, FSB ("Lehman") purchased the Unit 7C Note and Unit 5F Note on May 24, 2006. *See* Amended Compl. at ¶38.   The Amended Complaint also states that Aurora is Lehman's successor-in-interest.   *Id.*   The Amended Complaint further states that Aurora is the current holder and servicer of the Unit 7C Note and Unit 5F Note. *Id.* at 39

During the deposition of Plaintiff's corporate designee, Shirley A. Flaig, however, it was revealed for the first time in this litigation that Aurora is **not** the successor-in-interest to Lehman. *See* SOF ¶ 54. Rather, Ms. Flaig's testimony established that Aurora is simply the servicer of the mortgage loan and that Lehman is the purported owner of the mortgages and notes at issue in this action. *See* SOF ¶ 48-54.

The Amended Complaint, however, fails to allege that Aurora, the loan servicer, has a concrete, pecuniary interest in the mortgages and notes or in the outcome of this action. *See In re Alcibiades & Irma Nunez*, 98-CV-7077, 98-CV-7078, 2000 U.S. Dist. LEXIS 12078, *26 (E.D.N.Y. March 17, 2000). As such, Aurora has failed to properly allege or establish that it has standing to bring this action. *Id.* 2000 U.S. Dist. LEXIS 12078, at *26.

## POINT II

## AS AN ASSIGNEE OF THE FDIC-RECEIVER, CHASE IS A HOLDER IN DUE COURSE

It is believed that Plaintiff will argue that Chase cannot enforce its rights as a primary mortgage holder because Sadek and/or FFE allegedly perpetrated a fraud in the course of issuing and recording the Washington Mutual Mortgage, and Chase as an assignee of FFE took subject to that defense and with constructive knowledge of FFE's actions.  It is well-settled that "an assignee of a mortgage takes it subject to the equities attending the original transaction." *Lapis Enters., Inc. v. Int'l Blimpie Corp.*, 84 A.D.2d 286, 445 N.Y.S.2d 574 (App. Div. 2d Dep't 1981).[2]  Thus, the assignee takes the mortgage subject to the mortgagor's action for fraud.  *Id.* New York law is clear, however, that Chase – as a holder in due course – is entitled to enforce its mortgage as a primary mortgage regardless of any improper actions by FFE and regardless of any claims of alleged constructive knowledge raised by Plaintiff.

## A.     CHASE IS A HOLDER IN DUE COURSE

The holder in due course doctrine is derived from the Uniform Commercial Code (the "U.C.C.").  Chase, has the burden of proving that it is a holder in due course of the WAMU Note.  *A.I. Trade Fin., Inc. v. Laminaciones de Lesaca, S.A.*, 41 F.3d 830, 836 (2d Cir. 1994).  To qualify as a holder in due course, Chase must establish by a preponderance of the evidence that it is:  (1) a holder; (2) of a negotiable instrument; (3) who took it for value; "(4) in good faith; and (5) without notice that it is overdue or has been dishonored or of any defense against or claim to it on part of any person." N.Y. U.C.C. § 3-302(1) (McKinney 2001); Barkley v. Olympia Mort. Co., 04-cv-875, 05-cv-187, 05-cv-4386, 05-cv-5302, 05-cv-5362, 05-cv-5679, 2010 U.S. Dist. LEXIS 95060, *72-73 (E.D.N.Y. Sept. 13, 2010); *Laminaciones de Lesaca*, 41 F.3d at 835.

---

[2] The WAMU Mortgage states that it shall be governed by New York law.  *See* SOF ¶ 67.

1.      Chase is the Holder of the WAMU Note

There is no serious question that Chase is the holder of the WAMU Note as it acquired that asset from the FDIC as receiver of WAMU[3] and, as set forth *infra*, the *D'Oenche Duhme* doctrine voids any purported settlement agreement that would undercut or diminish Chase's rights under the WAMU Note. *See* Point IV.

2.      The WAMU Note is a Negotiable Instrument

To qualify as a negotiable instrument under the U.C.C., a document must: "(a) be signed by the maker or drawer; and (b) contain an unconditional promise or order to pay a sum certain in money and no other promise, order, obligation or power given by the maker or drawer except as authorized by . . . [Article 3]; and (c) be payable on demand or at a definite time; and (d) be payable to order or to bearer." N.Y. U.C.C. § 3-104(1).  Again, even a cursory review of the WAMU Note shows that it is a negotiable instrument under this standard.  *See In re: Apponline.com, Inc.*, 290 B.R. 1, 17 (Bankr. E.D.N.Y. 2003)]

3.      Value

The next issue to examine is whether as a matter of law Chase acquired the WAMU Note for value.  N.Y. U.C.C. § 3-302(1).  "A holder takes the instrument for value: (a) to the extent that the agreed consideration has been performed or that he acquires a security interest in or a lien on the instrument otherwise than by legal process; or (b) when he takes the instrument in payment of or as security for an antecedent claim against any person whether or not the claim is due; or (c) when he gives a negotiable instrument for it or makes an irrevocable commitment to a third person."  N.Y. U.C.C. § 3-303. As Chase clearly purchased the WAMU Note from the FDIC as receiver of WAMU, Chase took the WAMU Note for value.  *See* SOF ¶ 84.

---

[3] We ask the Court to take judicial notice of this fact as in a motion for summary judgment the Court "may consider all papers and exhibits appended to the complaint, as well as any matters of which judicial notice may be taken." *Hirsch v. Arthur Andersen & Co.*, 72 F.3d 1085, 1092 (2d Cir. 1995).

4.    Good Faith

"Under N.Y. U.C.C. § 3-302(1)(b), 'good faith' 'requires honesty only. It does not require the exercise of due care.'" *Apponline.com, Inc.*, 290 B.R. at 13 (citing *Bank of N.Y. v. Welz*, 118 Misc.2d 645, 648, 460 N.Y.S.2d 867, 870 (Sup. Ct. N.Y. Cnty. 1983)); *Barkley*, 2010 U.S. Dist. LEXIS 95060, *75.  Good faith is dependent on "what the holder actually knew of the transaction in question." *Apponline.com*, 290 B.R. at 13  (citing *Regent Corp., U.S.A. v. Azmat Bangladesh, Ltd.,* 253 A.D.2d 134, 142, 686 N.Y.S.2d 24, 29 (1st Dep't 1999)). "'**Constructive knowledge is insufficient** and it is irrelevant what a reasonable person in [Chase's] position should have known or should have inquired about.'" *Id.* (emphasis added).  As there is absolutely no evidence, whatsoever, that Chase knew of the actions of Sadek and FFE, it is clear Chase has met its burden of good faith in connection with this transaction.

5.    Lack of Knowledge

Finally, N.Y. U.C.C. § 3-304(7) states that "to constitute notice of a claim or defense, the purchaser must have knowledge of the claim or defense or knowledge of such facts that his action in taking the instrument amounts to bad faith." Under New York law, a subjective test is employed to determine whether a holder has notice of a claim or defense. *Fortunoff v. Triad Land Assocs.*, 906 F. Supp. 107, 113 (E.D.N.Y. 1995) (citing *Indyk v. Habib Bank, Ltd.*, 694 F.2d 54, 56 (2d Cir. 1982)).

Plaintiff has presented no evidence, whatsoever, that Chase had knowledge or notice of any claims or defenses against the enforcement of the WAMU Note, mainly because there is no such evidence.  As such, it is clear that Chase has satisfied the five part test under the UCC and is a holder in due course of the WAMU Note.  Further, it is clear that Chase did not have knowledge of any potential claim or defense relating to this mortgage transaction since a title

search regarding Unit 7C would have revealed nothing since the $1.35 million mortgage or any assignments of said mortgage were not recorded and, thus, unknowable to Washington Mutual.

6.   Protections Of A Holder In Due Course

To the extent that a holder is a holder in due course he takes the instrument free from:

> (1) *all claims* to it on the part of *any person*; and
> (2) *all defenses* of *any party* to the instrument with whom the holder has *not dealt* except (a) infancy, (b) such other incapacity, or duress, or illegality of the transaction,[4] as renders the obligation of the party a nullity, (c) such misrepresentations as has induced the party to sign the instrument with neither knowledge nor reasonable opportunity to obtain knowledge of its character or its essential terms, (d) discharge in insolvency proceedings, and (e) any other discharge of which the holder has notice when he takes the instrument.

N.Y. U.C.C. § 3-305 (*emphasis added*).

Thus, as a holder in due course of the WAMU Note, Chase took it "free from . . . all claims to it on the part of any person; and all defenses of any party to the instrument with whom" Chase did not deal. N.Y. U.C.C. § 3-305 (1)-(2).  Further, a holder in due course of a mortgage note "takes the mortgage as he takes the note, free from the objections to which it was liable in the hands of the mortgagee." *Carpenter v. Longan*, 83 U.S. 271, 273 (1873).  As such, it is indisputable that Chase, as the holder in due course of the WAMU mortgage took it free and clear of any claims or defenses that could be raised by Aurora.

---

[4] The illegality defense under *Uniform Commercial Code, § 3-305*, sub [2b] is available only if under the applicable state law the effect of the illegality is to make the obligation entirely null and void; the defense is ineffective against a holder in due course if the illegality causes the contract to be merely voidable. *Bankers Trust Company* v. *Litton Systems*, 599 F.2d 488 (2nd Cir. 1979).

## POINT III

### SINCE NEW YORK IS A RACE NOTICE STATE, CHASE'S MORTGAGE IS SUPERIOR TO AURORA'S MORTGAGE BECAUSE IT WAS RECORDED FIRST

Historically, under race-notice statutes codified in state real property law, a security interest in a mortgage was perfected by recording the assignment. N.Y. REAL PROP. LAW § 291 (McKinney 2006). Pursuant to Section 291:

> A conveyance of real property, within the state, on being duly acknowledged by the person executing the same, or proved as required by this chapter, and such acknowledgment or proof duly certified when required by this chapter, may be recorded in the office of the clerk of the county where such real property is situated, and such county clerk shall, upon the request of any party, on tender of the lawful fees therefor, record the same in his said office. Every such conveyance not so recorded is void as against any person who subsequently purchases or acquires by exchange or contracts to purchase or acquire by exchange, the same real property or any portion thereof . . . in good faith and for a valuable consideration, from the same vendor or assignor, his distributees or devisees, and whose conveyance, contract or assignment is first duly recorded, and is void as against the lien upon the same real property or any portion thereof arising from payments made upon the execution of or pursuant to the terms of a contract with the same vendor, his distributees or devisees, if such contract is made in good faith and is first duly recorded.

*Id.*

Under this statute, "[a] mortgage is held to be a conveyance and an assignee thereof a purchaser." *The Provident Bank v. Community Home Mortgage Corp.*, 498 F. Supp. 2d 558, 567 (E.D.N.Y. 2007) (citing *Gray v. Delpho*, 97 Misc. 37, 43, 162 N.Y.S. 194, 198 (Sup. Ct. Oneida Cnty. 1916) (citing N.Y. REAL PROP. LAW §§ 290, 291) (additional citations omitted); *Chen v. Geranium Dev. Corp.*, 243 A.D.2d 708, 709, 663 N.Y.S.2d 288, 289 (App. Div. 2d Dep't 1997)).

"The New York Recording Act . . . *inter alia*, protects a good faith purchaser for value from an unrecorded interest in a property, provided such a purchaser's interest is first to be duly recorded.") *Id.* (internal quotations omitted) (citing N.Y. REAL PROP. LAW §§ 291, 294). Thus, under the statute, "a bona fide purchaser for value, without notice of a [senior] mortgage, who

records his assignment is entitled to priority over a prior unrecorded mortgage of which his assignor had full knowledge." *Id.* (citations omitted).

Thus, under New York's race-notice statute, whichever party first recorded its mortgage, without notice of any prior mortgage, has a priority interest in such loan. *Household Fin. Realty Corp. v. Emanuel*, 2 A.D.3d 192, 193, 769 N.Y.S.2d 511, 513 (App. Div. 1st Dep't 2003) ("While executed prior to plaintiff's mortgage, the [first] mortgage lost its priority because plaintiff, a good-faith lender for value, recorded its security interest first without knowledge of the prior loan.") (citing N.Y. REAL PROP. LAW § 291); *Wash. Mutual Bank v. Peak Health Club, Inc.*, No. 018977/2003, 2005 N.Y. Misc. LEXIS 3392, at *6 (Sup. Ct. Nassau Cnty. 2005) ("Although executed prior in time, the mortgage to WAMU lost its priority because Merrill Lynch, a good faith lender for value recorded its mortgage first and lacked notice and knowledge of [f]acts which placed it under a duty to make further inquiry of the [f]acts and circumstances of the transaction.") (citing *Household Fin. Realty Corp.*, 2 A.D.3d at 193, 769 N.Y.S.2d at 513) (additional citation omitted); *Builders Equity, Inc. v. Larkport Bldg. Corp.*, 17 Misc. 2d 967, 969, 185 N.Y.S.2d 595, 596-97 (Sup. Ct. Suffolk Cnty. 1959) (where mortgagor executed two mortgages on the same land, the purchaser of the mortgage that was first recorded was held to have a "prior and superior lien"). Significantly, where "the prior conduct was fraudulent[,] it must be shown that the subsequent grantee who recorded first knew or should have known of the fraud." *Peak Health Club*, 2005 N.Y. Misc. LEXIS 3392, at *5.

In this case, Washington Mutual's mortgage regarding Unit 7C was recorded prior to Aurora's $1.35 million mortgage (which has still not been recorded). Additionally, Aurora has presented absolutely no evidence to even suggest that Washington Mutual had any knowledge of the purported $1.35 million mortgage and, even if Aurora did try to present such evidence,

Chase, as a holder in due course, took the mortgage and note free and clear of any such claims or defenses. Therefore, under Section 291, Chase is entitled to priority as its mortgage was recorded first. *Id.* 2005 N.Y. Misc. LEXIS 3392, at *6-7 ("While there may have been elements of fraud in connection with the transactions, Merrill Lynch was justified in relying on the protection of the Recording Act and as between Merrill Lynch and the other parties to these actions Merrill Lynch was in no better position than any other party to prevent the perpetration of such a fraud.") (citing *LPP Mortgage, Ltd. v. The Card Corp.*, 17 A.D.3d 103, 793 N.Y.S.2d 346 (App. Div. 1st Dep't 2005)).

Finally, the perfection of the parties' secured interests under Article 9 has no bearing on the determination of their priority interests under Article 3. *In re Apponline.com, Inc.*, 285 B.R. 805, 820 (Bankr. E.D.N.Y. 2002) ("It is undisputed that [the warehouse lenders] had possession of the notes in question and therefore had perfected security interests in the mortgages in question [under Article 9]. However, this has no bearing on [the warehouse lenders'] status as holders in due course of the notes and mortgages in question.").

As Chase is clearly a bona fide purchaser for value, without notice of the purported Aurora mortgage that recorded its mortgage first is entitled to priority over Aurora's purported unrecorded mortgage of which Chase had no knowledge.

## POINT IV

### THE COMMON LAW D'OENCH DHUME DOCTRINE OR ITS STATUTORY COUNTERPART, 12 U.S.C. § 1823(e), INVALIDATES THE SETTLEMENT AGREEMENT

It is anticipated that Plaintiff will attempt to argue that a settlement agreement purportedly entered into by Sadek and WaMu will invalidate Chase's senior mortgage. For the reasons explained below, that purported settlement agreement is void as to Chase:

14

"The common law *D'Oench Dhume* doctrine and its statutory codification, 12 U.S.C. § 1823, prohibit claims based on agreements not reflected in the official records of a failed bank or savings and loan institution." *FDIC v. Noel*, 177 F.3d 911, 914 (10th Cir. 1999). The purpose of the doctrine is to "'permit regulators to accurately appraise the assets of savings institutions by allowing the regulators to rely on the assets' face value.'" *Id.* (quoting *Castleglen, Inc. v. Resolution Trust Corp.*, 984 F.2d 1571, 1576 (10th Cir. 1993); *see also Dimuzio v. Resolution Trust Corp.*, 68 F.3d 777, 780 (3d Cir. 1995) (one purpose of Section 1823(e) is "to permit federal and state bank examiners accurately and quickly to assess the financial condition of a federally insured depository institution by examining its books and records."). Since its inception, the *D'Oench Dhume* doctrine has expanded to cover a variety of situations. *See, e.g., Young v. FDIC*, 103 F.3d 1180, 1187 (4th Cir. 1997) ("courts...have expanded the doctrine, and it now applies in virtually all cases where the FDIC is confronted with an agreement not documented in the institution's records") (citation omitted). "The Federal Deposit Insurance Act of 1950, as currently codified, provides that 'no agreement which tends to diminish or defeat the interest of the [RTC] in an asset acquired by it . . . by purchase . . . shall be valid against the [RTC] unless' certain requirements are satisfied. 12 U.S.C. § 1823(e) (1988 & Supp. IV 1992)." *Resolution Trust Corp. v. Hidden Ponds Phase IV Dev. Assocs.*, 873 F. Supp. 799, 804 (E.D.N.Y. 1995).

> The requirements are that such agreement:
> (1) is in writing;
>
> (2) was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
>
> (3) was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and

(4) has been, continuously, from the time of its execution, an official
record of the depository institution.

*Id.*

Where a defense is based on an agreement which tends to diminish the FDIC's interest in

the note and mortgage, § 1823(e) must be overcome. *Id.* at 804. Courts have held that the

doctrine applies even where the entity asserting the doctrine had knowledge of the alleged

agreement. *See Langley v. FDIC*, 484 U.S. 86, 93-95 (1987). Moreover, Courts have held that

Section 1823(e) is available to purchasers of assets from the FDIC because it is necessary to

encourage the purchase of holdings of failed institutions without fear of subsequent lawsuits

based on unknown agreements. *Porras v. Petroplex Sav. Ass'n.*, 903 F.2d 379, 381 (5th Cir.

1990); *Bell & Murphy & Assocs., Inc. v. Interfirst Bank Gateway, N.A.*, 894 F. 2d 750, 754 (5th

Cir. 1990); *Castleglen, Inc.*, 984 F.2d at 1577 ("the protection given to the . . . receiver would be

vitiated if a successor in interest could not enjoy the same protection").

## A.  THE SETTLEMENT AGREEMENT DOES NOT SATISFY THREE OF THE FOUR REQUIREMENTS OF A VALID AGREEMENT PURSUANT TO 12 U.S.C. § 1823(e).

The Settlement Agreement does not satisfy three of the four requirements of a valid

agreement pursuant to 1823(e) and therefore it must be deemed invalid and unenforceable.

"Failure to satisfy one of the requirements of section 1823(e) is fatal to any agreement covered

by that section." *FDIC v. Wright*, 942 F.2d 1089, 1101 (7th Cir. 1991); *Resolution Trust Corp. v.

Shuffield*, No. 92-1684, 1993 U.S. App. LEXIS 306 (8th Cir. 1993).

### 1.  The Settlement Agreement was not Executed by the Depository Institution AND Aurora

Aurora, the party claiming an adverse interest to Chase, did not execute the Settlement

Agreement as required by § 1823(e). Where the party claiming an adverse interest to the bank as

assignee of the FDIC-Receiver has not executed the alleged agreement, the agreement does not meet the execution requirement and is an invalid agreement. *See Resolution Trust Corporation v. Hidden Ponds Phase IV Develop. Assocs.*, 873 F. Supp. 799, 804 (E.D.N.Y. 1995); *Harrison v. Wahatoyas, L.L.C.*, 253 F.3d 552, 559 (10th Cir. 2001) (settlement agreement prior to bank's failure was not enforceable by a non-party to the agreement)

In *FDIC v. Giammettei*, 34 F.3d 51, 56 (2d Cir. 1994), an escrow agreement was held to be invalid because it was not "executed by the 'persons claiming an adverse interest . . . .'" The escrow agreement in question was an agreement by and between the bank and the general partners of the borrower. As such, it was executed by the two general partners of the borrower and an employee of the bank. However, none of the eleven limited partners/defendants executed the agreement. The Court held that the language of Section 1983(e) is clear that the agreement must be executed by any person claiming an adverse interest. The Court stated that "[t]he purpose of the requirement is to ensure that bank officials examining the official records of the bank may easily identify any collateral agreement that may 'diminish or defeat' the bank's interest in an asset. This purpose might well be defeated if a person could claim an adverse interest under an agreement that was signed by somebody else." *Id.* at 56.

The *D'Oench Dhume* doctrine's prohibition on outside parties seeking to enforce agreements has even been applied to settlement agreements. *Harrison v. Wahatoyas, L.L.C.*, 253 F.3d 552, 559 (10th Cir. 2001). In *Harrison*, the court considered a settlement agreement executed prior to a bank's failure. The Court determined that the settlement was not enforceable by a non-party to the agreement pursuant to the D'Oench Dhume doctrine.

Here, Aurora is claiming an interest adverse to Chase by claiming that its lien is superior to Chase's lien. Furthermore, as mentioned above, Chase anticipates that Aurora will argue that

the Settlement Agreement nullifies Chase's mortgage. The Settlement Agreement allegedly constituted an agreement among David Sadek, Etty Sadek, First Financial Equities and WAMU Bank. Because Aurora is claiming the adverse interest in this Action, Aurora does not satisfy the requirement that the party claiming an adverse interest execute the agreement. Thus, on its face the Settlement Agreement fails to satisfy the first requirement of Section § 1823(e).

> 2.   The Settlement Agreement was not Executed Contemporaneously with the Acquisition of the Asset by the Depository Institution

The Settlement Agreement, dated September 12, 2008 was not executed contemporaneously with the acquisition of the asset by WAMU on February 2, 2007, and thus the Settlement Agreement does not meet the second requirement of Section 1823(e).[5] "'Contemporaneously' should be strictly interpreted." *Resolution Trust Corp. v. Midwest Fed. Sav. Bank*, 36 F.3d 785, 797 (9th Cir. 1993). One of the purposes of § 1823(e), "implicit in its requirement that the agreement be executed 'contemporaneously' with the acquisition of the asset and approved by officially recorded action of the bank's board or loan committee, is to 'ensure mature consideration of unusual loan transactions by senior bank officials, and prevent fraudulent insertion of new terms, with the collusion of bank employees, when a bank appears headed for failure.'" *Dimuzio v. Resolution Trust Corp.*, 68 F.3d 777, 780 (3d Cir. 1995) (quoting *Langley*, 484 U.S. 86, 91 (1987); *see also Midwest Fed. Sav. Bank*, 36 F.3d 785 (the requirement is "that the 'agreement' not merely be on file in the bank's records at the time of an examination, but also have been executed and become a bank record 'contemporaneously' with the making of the note . . .") (citation omitted); *The Inn at Saratoga Assocs. V. FDIC*, 856 F. Supp. 111, 117 (N.D.N.Y. 1994) ("even if there is a written, executed agreement, there must also be a contemporaneous transfer of an asset . . .").

---

[5] The date of the acquisition of the asset by Chase from the FDIC is irrelevant to this determination.

Courts have held in cases where, as here, it is impossible that the agreement was executed contemporaneously with the acquisition of the asset additional discovery would be inappropriate because the party "would not be entitled to relief under any state of facts which could be proven in support of their claims." *See Dimuzio*, 68 F.3d at 782. The Court in *Dimuzio* dedicated nearly two pages to the contemporaneous requirement and that many agreements can never satisfy this requirement. The Court stated: "[e]ither the statutory requirements are met or they are not. We cannot ignore the plain language of the statute and binding precedent of our court to reach an arguably more equitable result." *Id.* at 783.

Here, the alleged Settlement Agreement was executed on September 12, 2008, a mere 13 days prior to the OTS' seizure of WAMU. The loan at issue in this matter was assigned to WAMU on February 2, 2007. Thus, the Settlement Agreement was not executed contemporaneously with WAMU's acquisition of the asset. As a result, the alleged Settlement Agreement does not meet the second requirement of Section § 1823(e) and is therefore invalid.

3.     The Minutes of the Depository Institution's Board of Directors or Loan
        Committee do not Reflect an Approval of the Settlement Agreement

Where there is no evidence that the agreement was approved by the board of directors or the bank's loan committee and no such agreement is reflected in the minutes of said board or committee, the agreement cannot stand pursuant to § 1823(e). *Resolution Trust Corp. v. Hidden Ponds Phase IV Dev. Assocs.*, 873 F. Supp. 799, 806 (E.D.N.Y. 1995); *see also Resolution Trust Corp. v. Shuffield*, No. 92-1684, 1993 U.S. App. LEXIS 306 (8th Cir. 1993) (settlement agreement was not reflected in the board of directors meeting minutes and thus was invalid and unenforceable); *FDIC v. Krause*, 904 F.2d 463, 466 (8th Cir. 1990) ("the agreement failed to meet at least one of the requirements – that approval by the board of directors or loan committee be reflected in the minutes of the board or committee," and was therefore

unenforceable); *FDIC v. P.L.M. Int'l., Inc.*, 834 F.2d 248, 253 (1st Cir. 1987) (agreement allegedly releasing borrowers from liability on their guaranties not reflected in the board minutes and not included in official files of depository institution held invalid).

Even where evidence is found that an agreement was contemplated by the Board of Directors or Loan Committee, Courts have dismissed claims. *See, e.g., Resolution Trust Corp. v. Ruggiero*, 977 F.2d 309, 316 (7th Cir. 1992) (holding that where the agreement at issue was included in the board's "draft" minutes, but not the final minutes, the agreement was unenforceable under § 1832(e)). Moreover, it has been held that in situations where the bank President and Chairman of the Board executed an agreement the agreement was insufficient because the minutes of a meeting of the board of directors did not reflect approval of the agreement. *See, e.g., FDIC v. Gardner*, 606 F. Supp. 1484, 1487-88 (S.D. Miss. 1985).

Here, Plaintiff is unable to prove that the alleged Settlement Agreement was approved by WAMU's board of directors or by its loan committee because the agreement is not reflected in the minutes of any meeting held by the board or WAMU's loan committee. Thus, the Settlement Agreement is unenforceable and cannot be used by Plaintiff in this action.

4. <u>The Settlement Agreement has not Continuously, From the Time of its Execution, been an Official Record of the Depository Institution</u>

The Settlement Agreement was not an official record of WAMU at the time of its failure and it was not contained in the books and records. "Section 1823(e)(4) states that a claim against the FDIC is not valid unless the subject 'agreement...has been, continuously, from the time of its execution, an official record of [the acquired bank.]'" *The Inn at Saratoga Assocs. v. FDIC*, 856 F. Supp. 111, 117 (N.D.N.Y. 1994); *see also Hidden Ponds Phase IV Dev. Assocs.*, 873 F. Supp. at 806. It was the intent of Congress to ensure that federal and state bank examiners could rely on the bank's records in evaluating the assets of a bank. *See Langley*, 484 U.S. at 92. Section

1823(e)(4) requires that the agreement itself be "continuously from the time of execution, an official record of the" depository institution. *Id.* at 90. "Scattered evidence in corporate records from which one could infer the existence of an agreement does not meet the requirements of the statute. The purpose of the doctrine is certainty and an 'inference' of an alleged agreement 'does not meet the requirements of 1823(e).'" *Castleglen, Inc.*, 984 F. 2d at 1579 (quoting *Beighley v. FDIC*, 868 F.2d 776, 782-83 (5th Cir. 1989)). The statute accomplishes its purpose, "in part, by limiting the enforceability of 'agreements' affecting the institution's assets . . . to those that are properly recorded in the books and records of the institution." *Dimuzio*, 68 F.3d at 780.

In this case, no evidence has been presented that would indicate that the Settlement Agreement was contained in the books and records of WAMU. In fact, Chase did not receive copy of the Settlement Agreement until it was produced at the deposition of Defendant David Sadek. Thus, the Settlement Agreement was not on the books and records of WAMU when the FDIC-Receiver took over the assets of WAMU and subsequently sold the at issue loan to Defendant Chase. As such, the Settlement Agreement does not satisfy the 4th requirement of Section 1823(e) and the Settlement Agreement is therefore unenforceable.

## CONCLUSION

For the reasons set forth above, Chase respectfully requests that the Court grant Chase's Motion to for summary judgment dismissing Plaintiff's amended complaint in its entirety, together with such other, further, and different relief as to the Court seems just and proper.

Dated: Garden City, New York
      June 13, 2010

                                  Respectfully submitted,

Of Counsel:                           CULLEN AND DYKMAN LLP
James G. Ryan, Esq.
Justin F. Capuano, Esq.
Cynthia A. Augello, Esq.               By:
                                    Cynthia A. Augello (CA 3839)
                                    Attorneys for JPMorgan Chase Bank, N.A.
                                    100 Quentin Roosevelt Boulevard
                                    Garden City, New York 11530
                                    (516) 357-3700