UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------------X
AURORA LOAN SERVICES LLC

       Plaintiff,

  -against-

DAVID SADEK; WINTHROP ABSTRACT, LLC;
FIRST FINANCIAL EQUITIES, INC.; THE CLOSING
NETWORK, LTD.; 100 W. 58TH ST. 7C LLC;
MORTGAGE ELECTRONIC REGISTRATION
SYSTEMS, INC.; JPMORGAN CHASE BANK, N.A.;
BOARD OF MANAGERS WINDSOR PARK
CONDOMINIUM; WINDSOR TOV LLC;
FREMONT INVESTMENT & LOAN;
JOHN DOES 1-10

       Defendant.
------------------------------------------------------------------X

OPINION & ORDER

09 Civ. 9651 (HB)

**Hon. HAROLD BAER, JR., District Judge:**

  Before the Court are three motions for summary judgment. They are brought on by plaintiff Aurora Loan Services, LLC ("Aurora" or "Plaintiff"), defendant JPMorgan Chase Bank, N.A. ("Chase"), and defendant The Closing Network, Ltd. ("TCN"). Chase has also filed a motion to dismiss. For the reasons that follow, the motion to dismiss is DENIED; the motions for summary judgment filed by Aurora and Chase are DENIED, and TCN's motion is DENIED as moot.[1]

  This is a foreclosure action with a number of related claims and counterclaims that arise out of mortgages on two condominiums, units 7C and 5F located at 100 West 58th street, New York, New York ("Unit 7C" and "Unit 5F," respectively). The instant motions focus on two major issues. First, Aurora and Chase dispute the priority of their purported interests in Unit 7C (Unit 5F is not at issue here). Second, Aurora and TCN dispute whether TCN is liable for, among other things, its alleged failure to properly record the mortgage on Unit 7C that Aurora claims to hold.

---

[1] By stipulation and order dated August 18, 2011, all claims and crossclaims by or against TCN were dismissed.

1

## BACKGROUND[2]

*The "Aurora" Mortgage*

On February 21, 2006 defendant David Sadek purchased Unit 7C and Unit 5F from defendant Windsor Tov LLC ("Windsor"). Windsor executed two deeds transferring Unit 5F and Unit 7C to Sadek. *See* Aurora's 06/13/2011 Statement of Material Facts ("Pl. 06/13/2011 Statement") ¶ 1. Although the parties dispute how Sadek originally financed the purchases, the documentary evidence shows that on February 27, 2006, Sadek refinanced his purchase of Unit 7C with a loan for $1,350,000 from defendant First Financial Equity ("FFE"), executed a note in that amount (the "Aurora Note"), and secured the note with a mortgage on Unit 7C (the "Aurora Mortgage"). *See* Aurora's 06/23/2011 Counterstatement of Material Facts in Opp'n to Mot. for Summ. J. ("Pl. 06/23/2011 Statement") ¶¶ 12-15 and accompanying exhibits; TCN's 06/27/2011 Resp. to Pl.'s Counterstatement of Material Facts ("TCN 06/27/2011 Statement") ¶¶ 12-16. It is undisputed that the Aurora Mortgage was never recorded. Chase's 06/14/2011 Statement of Material Facts ("Chase 06/14/2011 Statement") ¶ 39; Pl. 06/23/2011 Resp. to Chase ¶¶ 32-42.

On May 24, 2006, Lehman Brothers Bank, FSB purchased the Aurora Note from FFE through its subsidiary Aurora. Pl. 06/23/2011 Statement ¶ 23; TCN 06/27/2011 Statement ¶ 23. The parties dispute whether Aurora – then a wholly-owned a subsidiary of Lehman – is the current "holder," but agree that at a minimum Aurora holds the Aurora Note and Aurora Mortgage. Pl. 06/13/2011 Statement ¶ 15; Chase 06/14/2011 Statement ¶ 51. *See also* 06/13/2011 Decl. of Angela Martinez, Vice President of Aurora ("Martinez Decl.") ¶¶ 4, 7; Deposition of Shirley Flaig ("Flaig Dep.") at 20, Ex. A to 06/13/2011 Aff. of Cynthia Augello, Attorney for Chase ("Augello 06/13/2011 Aff."); 06/23/2011 Supp. Decl. of Terry Martin, Aurora Foreclosure Specialist III ("Martin Supp. Decl.") ¶ 2 and Ex. A. Aurora alleges that it is the servicer for the Aurora Mortgage. *See* Pl. 06/13/2011Statement ¶ 15. Sadek defaulted on his monthly obligations under the Aurora Mortgage and it remains unpaid as of October 1, 2007. Pl. 06/13/2011 Statement ¶¶ 23-25.

*The "Chase" Mortgage*

On September 11, 2006, Sadek obtained an additional loan from FFE in the amount of $650,000 through a warehouse line of credit provided by Washington Mutual Bank ("WaMu"). To secure the loan, Sadek, on behalf of defendant 100 W. 58th St. 7C LLC ("7C LLC"), executed a second mortgage on Unit 7C (the "Chase Mortgage"), and that mortgage was recorded on December

---

[2] The following facts are undisputed unless otherwise noted.

15, 2006. Chase 06/14/2011 Statement ¶¶ 63-65; Pl. 06/23/2011 Resp. to Chase ¶¶ 63-65. 7C LLC is an entity owned by Sadek that never held title to Unit 7C. Chase 06/23/2011 Resp. to Aurora ¶ 17. Although Aurora disputes the validity of the transfer, on February 2, 2007, FFE transferred the Chase Mortgage to WaMu. Chase 06/14/2011 Statement ¶ 66; Pl. 06/23/2011 Resp. to Chase ¶ 66.

On February 15, 2008 WaMu commenced an action against Sadek, FFE and 7C LLC and others in the New Jersey Superior Court, Bergen County, Chancery Division, alleging breaches related to a number of loans and mortgages, including the Chase Mortgage. *See* WaMu Compl. ¶¶ 36-42, Ex. F to 06/13/2011 Sandelands Decl. That lawsuit was resolved through a settlement agreement dated September 12, 2008 (the "Settlement Agreement"). *See* Ex. E ¶ 4D to 06/13/2011 Sandelands Decl.; Pl. 06/23/2011 Resp. to Chase ¶¶ 81-82. While Chase disputes the relevance of the Settlement Agreement, it included an agreement that the Chase Mortgage was "paid in full." Chase 06/23/2011 Resp. to Pl.'s Statement of Material Facts ¶ 22.

WaMu was subsequently closed on September 25, 2008 by order of the Office of Thrift Supervision, and the FDIC was appointed its receiver. Chase 06/14/2011 Statement ¶¶ 85-86. While Chase acquired WaMu's assets from the FDIC that same day, Aurora disputes that Chase acquired the Chase Mortgage from WaMu as part of its purchase. Pl. 06/23/2011 Resp. to Chase ¶ 84.

### THE MOTION TO DISMISS FOR LACK OF SUBJECT MATTER JURISDICTION

Chase moves to dismiss this diversity action pursuant to Fed. R. Civ. P. 12(b)(1) on the grounds that Aurora has not shown that the parties are diverse. After Chase filed its motion, Aurora submitted a Second Amended Complaint ("SAC"), as well as a memorandum in opposition. Chase rejoined that Aurora had still not shown that jurisdiction exists.

### I. LEGAL STANDARD

On a motion to dismiss for lack of subject matter jurisdiction, a district court "must accept as true all material factual allegations in the complaint, but [it is] not to draw inferences from the complaint favorable to plaintiffs."*J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004). Where jurisdiction is based on 28 U.S.C. § 1332, there must be complete diversity of citizenship between the parties. Put simply, this means that no plaintiff can be a citizen of the same state as a defendant. *See Caterpillar Inc. v. Lewis*, 519 U.S. 61, 68 (1996); *Strawbridge v. Curtiss*, 2 L.Ed. 435, 435, 3 Cranch 267, 267 (1806) (overruled on other grounds). A complaint properly invoking diversity jurisdiction includes not just a statement of diversity, but "an averment of the particular states of which the parties are citizens." *Laufer Wind Grp. LLC v. DMT Holdings LLC*, No.

3

10 Civ. 8716 (RJH), 2010 WL 5174953, at *1 (S.D.N.Y. Dec. 20, 2010) (quoting *Ganoe v. Lumis*, 662 F.Supp. 718, 723 (S.D.N.Y. 1987)). Where diversity exists but defective pleadings do not make that clear, a plaintiff may cure its defect "simply by amending the complaint." *Leveraged Leasing Admin. Corp. v. PacifiCorp Capital, Inc.*, 87 F.3d 44, 47 (2d Cir. 1996).

## II. THE MOTION MUST BE DENIED

Plaintiff initially failed to indicate the citizenship of the defendant LLCs' members. Chase correctly points out that this is generally insufficient. *See Strother v. Harte*, 171 F. Supp. 2d 203, 205 (S.D.N.Y. 2001) (Chin, J.) (granting motion to dismiss for failure to sufficiently allege diversity jurisdiction where plaintiff did not indicate citizenship of defendant LLC members). Chase's remaining concern is with Winthrop Abstract, LLC ("Winthrop") and Windsor Tov LLC ("Windsor"). An LLC is a citizen of each state of which its members are citizens. *Handelsman v. Bedford Vill. Assoc. Ltd. P'ship*, 213 F.3d 48, 52 (2d Cir. 2000); *UBS Secs. LLC v. Voegeli*, 684 F. Supp. 2d 351, 345 n.5 (S.D.N.Y. 2010). While Chase no longer disputes the citizenship of each individual alleged to be a member of the two LLCs, it argues that Aurora has not provided a comprehensive list of all members.

This is not the first time I have had to resolve a motion in which "Plaintiff's claims of complete diversity are not exactly air tight." *Discovery Ortho Partners, LLC v. Osseous Techs. of Am., Inc.*, No. 10 Civ. 1729 (HB), 2010 WL 3239428, at *4 (S.D.N.Y. Aug. 17, 2010). Although the supporting documents are hardly a model of precision, Plaintiff need only show diversity by a preponderance of the evidence. *See Aurecchione v. Schoolman Transp. Sys., Inc.*, 426 F.3d 635, 638 (2d Cir. 2005). Following Chase's motion Plaintiff rectified its pleadings with the SAC, in which it alleges both the membership and citizenship of each defendant. *See* SAC ¶¶ 1-12.[3] These allegations are certified and signed by an officer of the Court subject to Rule 11, and I am constrained to accept them as true. *See Attica Cent. Sch.*, 386 F.3d at 110; Fed. R. Civ. P. 11. Between that and the Sandelands' Declaration – asserting diversity on pain of perjury – I conclude that the plaintiff has sufficiently shown that the parties are completely diverse. The motion is denied.

---

[3] Plaintiff dismissed Mortgage Electronic Registration Systems, Inc. as a dispensable non-diverse party. Chase did not object, and the move is permissible. *See LeBlanc v. Cleveland*, 248 F.3d 95, 98 (2d Cir. 2001); Fed. R. Civ. P. 21.

## THE MOTIONS FOR SUMMARY JUDGMENT

### I. LEGAL STANDARD

A district court may not grant summary judgment if there exists a genuine issue of material fact. *See Cotarelo v. Vill. of Sleepy Hollow Police Dep't,* 460 F.3d 247, 251 (2d Cir. 2006) (citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986)). "For summary judgment purposes, a 'genuine issue' exists where the evidence is such that a reasonable jury could decide in the non-moving party's favor." *Cambridge Realty Co., LLC v. St. Paul Fire & Marine Ins. Co.*, No. 10-2537-cv., 2011 WL 1667075, at *1 (2d Cir. 2011) (internal citations omitted). Where, as here, there are cross-motions for summary judgment, "each party's motion must be examined on its own merits, and in each case all reasonable inferences must be drawn against the party whose motion is under consideration." *Lumbermens Mut. Cas. Co. v. RGIS Inventory Specialists, LLC*, 628 F.3d 46, 51 (2d Cir. 2010) (citing *Morales v. Quintel Entm't, Inc.*, 249 F.3d 115, 121 (2d Cir. 2001)).

### II. THE CROSS MOTIONS BY AURORA AND CHASE

#### A. Chase is not entitled to summary judgment on standing grounds.

Chase first argues that Aurora lacks standing – a question "not subject to waiver." *United States v. Hays*, 515 U.S. 737, 742 (1995). Chase's premise is that Aurora has no pecuniary interest in the Aurora Mortgage..

In a New York mortgage foreclosure action, "[a] plaintiff has standing where it is both (1) the holder or assignee of the subject mortgage and (2) the holder or assignee of the underlying note, either by physical delivery or execution of a written assignment prior to the commencement of the action with the filing of the complaint." *Aurora Loan Servs., LLC v. Weisblum*, 923 N.Y.S.2d 609, 618 (2nd Dept. 2011). New York law provides that "[t]he holder of an instrument whether or not he is the owner may transfer or negotiate it and . . . enforce payment in his own name." NY UCC §3-301. *See Carlin v. Jemal*, 68 A.D.3d 655, 655-6 (1st Dept. 2009) ("Regardless of whether plaintiff is a "holder in due course" (*see* UCC 3–302), a mere "holder" (see UCC 1–201[20]), or only an "assignee" or "transferee" . . . , he has standing to bring this action."). Aurora has provided documentary evidence and declarations affirming that it is the holder of the Aurora Note and Aurora Mortgage, and has been since before the commencement of this litigation. *See* Martinez Decl. ¶¶ 7-9; Flaig Dep. at 20, 22, Ex. A to Augello Aff.; Martin Suppl. Decl. ¶ 2 and accompanying exhibits. According to the Aurora Note, the "Note Holder" is entitled to the protections of the accompanying

mortgage, *i.e.* the Aurora Mortgage, and may be "anyone who takes this Note by transfer and is entitled to receive payments under this Note." *See* Aurora Note, Ex. A to Martinez Decl. Thus, while I have some concerns about the sanctity of what happened here to say nothing of when it happened, under both New York law and the terms of the Aurora Note, Aurora has standing.

> **B. Aurora may not rely on the settlement in a New Jersey state court action to defeat Chase's claim to Unit 7C.**

On February 15, 2008, WaMu sued Sadek, FFE and others in New Jersey Superior Court in Bergen County, alleging a number of claims in relation to the Chase Mortgage, among others. *See* WaMu Compl. ¶¶ 36-42, Ex. F. to 06/13/2011 Sandelands Decl. WaMu, Sadek and FFE ultimately agreed to settle the lawsuit, and executed the Settlement Agreement dated September 12, 2008. *See* Ex. E. to 06/13/2011 Sandelands Decl. Under the Settlement Agreement, in consideration for $800,000 from Sadek and FFE, WaMu designated the Chase Mortgage and six other mortgages "paid in full." *Id.* Ex. E ¶ 4(D). A mere thirteen days later, the United States Office of Thrift Supervision seized WaMu and appointed the FDIC as receiver, pursuant to 12 U.S.C. § 1821 (2006). 06/15/2011 Aff. of Cynthia Augello, Attorney for Chase ("Augello 06/15/2011Aff.") ¶ 2. The same day, the FDIC sold WaMu and its subsidiaries to Chase – a sale that purportedly included the Chase Mortgage and accompanying note. *See* Augello 06/15/2011Aff. ¶ 3.

Aurora's position is that the Settlement Agreement renders the Chase Mortgage unenforceable. Chase maintains that the Settlement Agreement is invalid under the so-called *D'Oench, Duhme* doctrine. At least insofar as it pertains to the Chase Mortgage, I agree.

> 1. The legal framework of the *D'Oench, Duhme* doctrine

The *D'Oench, Duhme* doctrine, based on a 1942 Supreme Court opinion, was expanded by judicial interpretation and legislative codification . It "invalidates certain agreements between a bank's representatives and borrowers to modify the terms of a loan prior to the FDIC's appointment as a receiver for the bank, unless the agreement meets certain requirements, including being reduced to writing." *Caires v. JP Morgan Chase Bank*, 745 F. Supp. 2d 40, 51 (D.Conn. 2010) (citing *D'Oench, Duhme & Co. v. FDIC,* 315 U.S. 447 (1942)). A key purpose of the *D'Oench, Duhme* doctrine "is to allow federal and state bank examiners to rely on a bank's records in evaluating the worth of the bank's assets." *Langley v. Federal Deposit Ins. Corp.*, 484 U.S. 86, 91-92 (1987). As the Court explained, "[n]either the FDIC nor state banking authorities would be able to make reliable

evaluations if bank records contained seemingly unqualified notes that are in fact subject to undisclosed conditions." *Id.*

Under the common law, invalidation turned on "whether the purported agreement relied upon by the private party was ever memorialized in writing or otherwise made explicit such that ... the [FDIC] would have knowledge of the bank's obligations during an evaluation of the bank's records." *Duraflex Sales & Serv. Corp. v. W.H.E. Mech. Contractors*, 110 F.3d 927, 933 (2d Cir. 1997). Congress opted to expand the doctrine's reach by statute with such specific criteria that "an agreement that meets the requirements of the statute survives even if the [FDIC] did not know of it; and an agreement that does not meet them fails even if the [FDIC] knew." *Id.*

The statute provides that, with limited exceptions not applicable here:

> No agreement which tends to diminish or defeat the interest of the [FDIC] in any asset acquired by it under this section or section 1821 of this title, either as security for a loan or by purchase or as receiver of any insured depository institution, shall be valid against the [FDIC] unless such agreement--
>
> **(A)** is in writing,
>
> **(B)** was executed by the depository institution and any person claiming an adverse interest thereunder, including the obligor, contemporaneously with the acquisition of the asset by the depository institution,
>
> **(C)** was approved by the board of directors of the depository institution or its loan committee, which approval shall be reflected in the minutes of said board or committee, and
>
> **(D)** has been, continuously, from the time of its execution, an official record of the depository institution.

12 U.S.C. § 1823(e) (2006).

2. *D'Oench, Duhme* invalidates the Settlement Agreement insofar as it relates to the Chase Mortgage.

Aurora's principal argument is that the doctrine is only relevant where the FDIC acts in its corporate capacity – not, as here, where it acts as a receiver. While at some point in time this argument may have reflected a meaningful legal distinction, that time is long gone and the likelihood that Aurora knew that to be so may be worthy of an investigation all by itself. *See infra*; *Caires*, 745 F. Supp. 2d at 51 ("In 1989 . . . Congress further enlarged the scope of the doctrine by amending § 1823(e) to extend its protections to assets acquired by the FDIC through appointment as a receiver for

an insolvent financial institution."). I don't mean to pick only on Aurora. There are enough concerns about these transactions to tarnish other parties as well. In addition, as an assignee of the FDIC, Chase may invoke the *D'Oench, Duhme* doctrine to protect its interests. *See AAI Recoveries, Inc. v. Pijuan*, 13 F. Supp. 2d 448, 451 (S.D.N.Y. 1998); *Caires*, 745 F. Supp. 2d at 52 (listing cases).

Aurora also argues that the Settlement Agreement did not "diminish or defeat" an interest in the Chase Mortgage, as required by § 1823(e), because it allowed the holder to receive some value for an otherwise unsecured loan. This argument fails because it relies on characterizing the Chase Mortgage as unsecured – a legal characterization not proven. Moreover, Aurora contradicts its own premise when it argues elsewhere that Chase did not take the Chase Mortgage for value. *See, e.g.*, 06/23/2011 Pl.'s Mem. in Opp'n. to Mot. for Summ. J. at 16.

While the papers do not reveal precisely what extent of loss the FDIC suffered as a result of the Settlement Agreement, the record does show that its interests were at least diminished, if not completely defeated. Pursuant to the Settlement Agreement, WaMu accepted $800,000 and in exchange marked the Chase Mortgage and six others "paid in full." Even if the FDIC ultimately acquired the $800,000.00 paid to WaMu, that sum would still represent a greatly reduced amount. It can hardly have provided an equal exchange for the face value of the mortgages, which for the Chase Mortgage alone was $637,000.[4] *See* WaMu Compl. ¶ 36-42, Ex. F to 06/13/2011 Sandelands Decl. Indeed, the Settlement Agreement itself describes the settlement as a "compromise of disputed claims." Settlement Agreement ¶ 12.1, Ex. E to 06/13/2011 Sandelands Decl. I find that the Settlement Agreement diminished the value of assets for *D'Oench, Duhme* purposes.

3. <u>The Settlement Agreement does not meet the four requirements for exemption from the *D'Oench, Duhme* doctrine.</u>

The Settlement Agreement does not satisfy the second, third or fourth requirements set forth in § 1823(e), and is thus not exempted from the *D'Oench Duhme* doctrine. While Aurora is the party claiming the adverse interest here, it did not execute the Settlement Agreement. Additionally, the Settlement Agreement was not executed contemporaneously with the acquisition of the asset by WaMu. *Compare* Pl. Statement ¶ 19 (WaMu acquired the Chase Mortgage on February 2, 2007) *with* Settlement Agreement, Ex. E to 06/13/2011Sandelands Decl. (Settlement Agreement was executed

---

[4] According to WaMu's complaint, Sadek and FFE obtained funds from and guaranteed the repayment of millions of dollars to WaMu, including approximately $1.6 million plus interest in conversion of repayments from mortgagors, $637,000 plus interest and fees relating to a mortgage loan to #7C LLC, and approximately $720,800 plus interest and fees relating to properties not permitted to be funded under the parties' initial agreements. *See* WaMu Compl. ¶¶ 32-49, Ex. F to 06/13/2011Sandelands Decl.

on September 12, 2008). Aurora neither disputes these facts, nor shows that the other requirements are satisfied. I have considered Aurora's remaining arguments – including that the *D'Oench Duhme* is an affirmative defense that was waived[5] – and find them unpersuasive. I therefore conclude that the *D'Oench Duhme* doctrine precludes Aurora's use of the Settlement Agreement as a defense to any claim Chase may otherwise have with respect to the Chase Mortgage.

### C. Aurora is not entitled to summary judgment on the grounds that the Chase Mortgage was recorded outside the chain of title.

Aurora argues that the mortgage was executed by 7C LLC, and no deed ever conveyed the title of Unit 7C from Sadek to 7C LLC. Summary judgment on this point would be premature because, as described below, Chase's status as a holder in due course remains in issue and could impact the analysis that Aurora urges. In addition, although 7C LLC was the named borrower on the Chase Mortgage, Sadek was the actual signatory. *See* Ex. G to 06/13/2011 Sandelands Decl. Sadek was the sole member of 7C LLC, 06/13/2011 Sandelands Decl. ¶ 7(e), and did hold title. *See* Ex. E. to Martinez Decl. The fact that 7C LLC never officially held title to Unit 7C is not dispositive. I am unpersuaded that any infirmities in the form of the transaction are sufficient to render it void.

### D. Fact issues remain as to the order of priority of the purported mortgages.

Chase claims that it is entitled to summary judgment because it is a holder in due course of the 7C LLC Note and Mortgage, and its rights are therefore free from any claims on Unit 7C that Aurora may have. It also claims that it has priority in the property under New York's race-notice statute, because its mortgage was recorded first. Aurora argues that it is entitled to summary judgment on its claim for subordination of the Chase Mortgage for the same reasons rejected above, *i.e.* that the Chase Mortgage was recorded outside the chain of title, and that it was marked "paid in full" in the Settlement Agreement in the New Jersey action. It also argues that Chase had actual or constructive knowledge of the Aurora Mortgage at the time it originated the loan, and this defeats Chase's ability to claim priority under New York's race-notice and holder in due course rules. Because material facts remain in dispute, neither party is entitled to summary judgment.

---

[5] As just one problem with Aurora's argument, here and generally, the *D'Oench Duhme* doctrine does not function as an affirmative defense; rather it is raised to preclude an affirmative defense. *See F.D.I.C. v. Giammettei*, 34 F.3d 51, 55 (2d Cir. 1994) (finding a number of affirmative defenses subject to the *D'Oench Duhme* doctrine); *AAI Recoveries, Inc. v. Pijuan*, 13 F. Supp. 2d 448 (S.D.N.Y. 1998) (holding that *D'Oench, Duhme* doctrine precluded maker's affirmative defense of lack of consideration); *National Credit Union Admin. Bd. v. Raphael*, 871 F. Supp. 1574, 1576 (E.D.N.Y. 1994) (noting that *D'Oench, Duhme* precludes the affirmative defenses of waiver and failure of consideration).

1. <u>The holder in due course and race notice protections depend on whether Chase had notice of adverse claims.</u>

A purchaser of a negotiable instrument becomes a holder in due course if he "takes the instrument (a) for value; and (b) in good faith; and (c) without notice that it is overdue or has been dishonored or of any defense against or claim to it on the part of any person." *A.I. Trade Fin., Inc. v. Laminaciones de Lesaca, S.A.*, 41 F.3d 830, 835 (2d Cir. 1994) (quoting N.Y. U.C.C. § 3-302(1) (McKinney 2001)). Subject to certain exceptions not pertinent here, "a holder in due course takes the instrument free from (1) all claims to it on the part of any person; and (2) all defenses of any party to the instrument with whom the holder has not dealt." *Laminaciones*, 41 F.3d at 835; N.Y. U.C.C. §§ 3-305(1) and (2). "The holder in due course of negotiable paper secured by a mortgage takes the mortgage free of all equities and defenses of the mortgagor which are not available against the note itself." *In re AppOnline.Com, Inc.*, 290 B.R. 1, 14 (Bankr. E.D.N.Y. 2003) (citing Grant S. Nelson and Dale A. Whitman, *Real Estate Finance Law* § 5.31 (3d ed.1994); *Carpenter v. Longan*, 16 Wall. 271, 83 U.S. 271, 273 (1872)).

Under New York's "race-notice" recording statute, regardless of when a party purchases a contested real estate interest, the law accords priority to whichever interest is recorded first. N.Y. Real Prop. Law § 291.[6] "Under the statute, a mortgage is held to be a conveyance and an assignee thereof a purchaser." *The Provident Bank v. Cmty. Home Mort. Corp.*, 498 F. Supp. 2d 558, 567 (E.D.N.Y. 2007) (quoting *Gray v. Delpho*, 97 Misc. 37, 43 (Sup. Ct. Oneida Cnty. 1916)); *Chen v. Geranium Dev. Corp.*, 243 A.D.2d 708, 663 N.Y.S.2d 288, 289 (N.Y. App. Div. 1997).

"It has long been the rule that a purchaser with prepurchase notice, actual or constructive, of an unrecorded instrument or encumbrance is not a good faith purchaser for value and cannot avail himself or herself of the benefits of the recording statutes." *7 Vestry LLC v. Dept. of Fin. City of N.Y.*, 22 A.D.3d 174, 184 (1st Dept. 2005) (citing *Andy Assoc. v Bankers Trust Co.*, 49 NY2d 13, 17 (1979)); *see also Beltway Capital LLC v. Soleil*, 30 Misc. 3d 1214(A) (Sup. Ct., Kings Cnty. 2011). Put simply, "in order to cut off a prior lien, such as a mortgage, the purchaser must have no knowledge of the outstanding lien and win the race to the recording office." *Goldstein v. Gold*, 106 A.D.2d 100, 101-2 (2d Dept. 1984). Thus, whether Chase can be charged with knowledge of the

---

[6] "A conveyance of real property. . . may be recorded in the office of the clerk of the county where such real property is situated. . . . Every such conveyance not so recorded is void as against any person who subsequently purchases or acquires by exchange or contracts to purchase or acquire by exchange, the same real property or any portion thereof . . . in good faith and for valuable consideration . . ., and whose conveyance, contract or assignment is first duly recorded."

Aurora Mortgage will affect its ability to claim the protections of either N.Y. U.C.C. § 3-302(1) or N.Y. Prop. Law § 291, and could be determinative of the priority dispute in this case.

    2.   <u>Whether Chase had notice is a material fact that remains in dispute.</u>

Aurora first contends that Chase had actual knowledge of the Aurora Mortgage because it had been originated by FFE – the same party who later originated the Chase Mortgage. Because FFE originated both loans, at the time it originated the Chase Mortgage, it had actual notice of the unrecorded Aurora Mortgage. In support, it cites the deposition of David Sadek, as well as a number of loan documents, apparently for the purpose of showing that FFE indeed originated both loans. *See* 06/13/2011 Pl.'s Mem. in Supp. of Mot. for Summ. J. ("Pl. 06/13/2011 Mem.") at 12 and accompanying citations. Aurora next argues that Chase had constructive knowledge of the Aurora Mortgage because the documents contained within the Chase Mortgage origination file provided notice of the existence of the Aurora Mortgage. *See* Pl. 06/13/2011 Mem. at 13 (citing Exs. G, J, K to 06/13/2011 Sandelands Decl.). Aurora also suggests that a basic title search would have revealed the existence of the previous Aurora Mortgage. *See, e.g.*, Pl. 06/13/2011 Mem. at 13-14 (citing 06/13/2011 Sandelands Decl. ¶ 3).

    It is far from clear that Chase had notice. "When deciding a summary judgment motion in a civil case, all factual ambiguities must be resolved in the non-moving party's favor and the court may not weigh the evidence, but rather must only determine whether a genuine issue of fact exists for trial." *DeFabio v. East Hampton Union Free School Dist.*, 623 F.3d 71, 81 (2d Cir. 2010). Factual ambiguities exist as to whether Chase had notice of the prior mortgages, not to mention whether it meets the other requirements to assert priority or claim holder in due course status. *See, e.g.*, Pl. 06/23/2011 Resp. to Chase ¶ 87. Such facts "might affect the outcome of the suit [and therefore] preclude the entry of summary judgment." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). Accordingly, the cross-motions for summary judgment as between Aurora and Chase must be denied. I have considered the parties' remaining arguments and find them unpersuasive.

## CONCLUSION

For the foregoing reasons, Chase's motion to dismiss the SAC is DENIED, and any responsive pleading must be served within 10 days of receipt of notice of this decision. *See* Fed. R. Civ. P. 12(a)(4)(A). The motions for summary judgment filed by Aurora and Chase are DENIED, and the motion for summary judgment filed by TCN is DENIED as moot. The Clerk of the Court is directed to close the relevant motions and remove them from my docket.

**SO ORDERED.**

New York, New York
August 22, 2011

HAROLD BAER, JR.
United States District Judge